**Ex parte Mark Anthony HAWKINS, Applicant.**

**No. 73548.**

Court of Criminal Appeals of Texas, En Banc.

Dec. 8, 1999.

Mark Anthony Hawkins, pro se.

Bill Hill, Dist. Atty., Dallas, Matthew Paul, State's Atty., Austin, for State.

WOMACK, J., delivered the opinion of the Court, in which McCORMICK, P.J., and MANSFIELD, KELLER, PRICE, HOLLAND, and KEASLER, JJ., joined.

In this case we revisit the question, how many robbery prosecutions may be brought when an actor assaults more than one person in the course of stealing one item of property.

In January, 1993 a grand jury presented an indictment that alleged that the appli-

cant committed aggravated robbery of Gilberto Trevino, III on or about January 3, 1993.[1] In July another grand jury presented an indictment that alleged that he committed aggravated robbery of Chris Shipman on the same date.[2] On September 9 the applicant pleaded guilty to both indictments and was sentenced to two concurrent life terms. There was no plea-bargain agreement. The judgments were affirmed on appeal.

The applicant now seeks habeas corpus relief. He claims, among other things, that the Double Jeopardy Clause of the Fifth Amendment was violated by the two convictions.[3] He alleges, "Gilberto Trevino III, took the defendant, Mark Anthony Hawkins, to his manager once—not twice. ... You can not take money then turn around and take the same money again when you have the initial money already. Applicant was convicted in a single trial in two counts ... for the same offense of aggravated robbery." The judge of the convicting court has found, "The facts of this case indicate that Applicant held a gun to the head of Gilbert Trevino and led him to the cashier, Chris Shipman and pointed the gun at both of them as the bag was filled."

The applicant's claim is supported by a line of three of our cases, which we shall reexamine. We shall look first at their treatment of the Double Jeopardy Clause. We shall find that, when the applicable law of jeopardy is correctly understood, the

constitutional protection depends on the legislature's choice of the allowable unit of prosecution. When we turn to our holdings on that legislative choice, we shall find that the line of three cases conflicts with another line of our cases.

The leading case in the line that supports the applicant is *Ex parte Crosby*, 703 S.W.2d 683 (Tex.Cr.App.1986). Crosby and an accomplice broke into a residence, caused serious bodily injury to the husband and wife who lived there, and took a wallet from the person of the husband. They each pleaded guilty to two aggravated robberies for two concurrent life sentences. Then each sought habeas relief from the second conviction on double jeopardy grounds.

As to double jeopardy law, the *Crosby* Court rejected the *Blockburger* test because two distinct statutory provisions were not involved.[4] It relied on *Brown v. Ohio*, 432 U.S. 161, 169, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), for the rule that prosecutors could not avoid the Double Jeopardy Clause by "dividing a single crime into a series of temporal of spatial units [*sic*]."[5]

The Court was correct that the *Blockburger* test was irrelevant, but it was not quite right in its citation to *Brown v. Ohio*. Brown was convicted under two statutes for offenses that were continuous, and one of which was a lesser included offense of the other.[6] So the state was trying to

---

1. This was the trial court's case F–9301316–MK.

2. This was case F–9303048–RK. The grand jury also presented another indictment, which was for attempted capital murder of a third person on the same date, that is not relevant to this opinion.

3. The other claims are without merit, and relief on them is denied on the findings of the trial court.

4. In *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Court addressed the question, whether there could be two convictions for one sale of narcotics which violated two statutes. It was

resolved by the test for which the case became eponymous: "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Id.* at 304, 52 S.Ct. 180.

5. Thus in *Crosby*, 703 S.W.2d at 685; *Brown* actually said "temporal *or* spatial units."

6. In *Brown*, the Court held that, because "joyriding" in a stolen vehicle was a continuing offense, the prosecution could not bring separate prosecutions charging joyriding on one

divide one offense into two. This is not true of *Crosby*, in which only one statute was involved and, as everyone agrees, two offenses were committed. The *Crosby* problem is that each offense was proved in part by the same evidence. The jeopardy concept that applies is the "allowable unit of prosecution," which ultimately is determined by penal statutes.

The concept of the allowable unit of prosecution was set out in *Sanabria v. United States*, 437 U.S. 54, 69–70, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978):

> It is Congress, and not the prosecution, which establishes and defines offenses. Few, if any, limitations are imposed by the Double Jeopardy Clause on the legislative power to define offenses. *Brown v. Ohio*, 432 U.S. 161, 165[, 97 S.Ct. 2221, 53 L.Ed.2d 187] (1977). But once Congress has defined a statutory offense by its prescription of the "allowable unit of prosecution," *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221[, 73 S.Ct. 227, 97 L.Ed. 260] (1952) [ (allowable unit of prosecution under Fair Labor Standards Act was a course of conduct in setting wages below the statutory minimum, not each week's payment to each employee) ]; *Bell v. United States*, 349 U.S. 81[, 75 S.Ct. 620, 99 L.Ed. 905] (1955) [ (allowable unit of prosecution under the Mann Act was an act of transportation for immoral purposes, not the number of women transported) ]; *Braverman v. United States*, 317 U.S. 49[, 63 S.Ct. 99, 87 L.Ed. 23] (1942) [ (a single agreement to violate several penal statutes can result in only one conspiracy conviction) ]; *In re Nielsen*, 131 U.S. 176[, 9 S.Ct. 672, 33 L.Ed. 118] (1889) [ (Double Jeopardy Clause would not permit government to convict a man of bigamy, a continuous offense, and then prosecute him for committing adultery with the same wife on the next day) ], that prescription determines the scope of protection afforded by a prior conviction or acquittal. Whether a particular course of conduct involves one or more distinct "offenses" under the statute depends on this congressional choice.
>
> [Footnote 24:] See Note, Twice in Jeopardy, 75 Yale L.J. 262, 268, 302–310 (1965). Because only a single violation of a single statute is at issue here ... the case [is not] controlled by decisions permitting prosecution under statutes defining as the criminal offense a discrete act, after a prior conviction or acquittal of a distinguishable discrete act that is a separate violation of the statute. See, e. g., *Ebeling v. Morgan*, 237 U.S. 625[, 35 S.Ct. 710, 59 L.Ed. 1151] (1915)[ (permitting multiple convictions for opening multiple sacks of mail during a single incident) ]; *Burton v. United States*, 202 U.S. 344[, 26 S.Ct. 688, 50 L.Ed. 1057] (1906) [ (permitting convictions for both agreeing to receive, and receiving, compensation for doing prohibited act) ]. Cf. *Ladner v. United States*, 358 U.S. 169[, 79 S.Ct. 209, 3 L.Ed.2d 199] (1958) [ (single shotgun blast at multiple federal law enforcement agents is a single assault) ]; *Bell v. United States*, 349 U.S. 81[, 75 S.Ct. 620, 99 L.Ed. 905] (1955) [see text above].

■■ This passage from *Sanabria* tells us several things: The Double Jeopardy Clause is offended if a defendant is successively prosecuted for the same offense. The legislature defines whether offenses are the same. It does so by prescribing the "allowable unit of prosecution," which is "a distinguishable discrete act that is a separate violation of the statute." And the

---

day and theft (of which joyriding is a lesser included offense) on another day in the same stolen car. Although *Brown* is best known for its discussion of greater and lesser offenses, it is also significant for its continued insistence that when a statute sets no temporal limits on an offense, a prosecutor may not bring multiple charges by arbitrarily dividing a range of time into separate fragments. William H. Theis, *The Double Jeopardy Defense and Multiple Prosecutions For Conspiracy*, 49 SMU L. Rev 269, 282 n. 6 (1996).

discovery of the allowable unit of prosecution is a task of statutory construction.[7]

Our line of cases got off on the wrong foot when the *Crosby* Court identified the double jeopardy question as the one addressed in *Brown v. Ohio* rather than the one that is resolved by finding the allowable unit of prosecution.

The next case in the line, *Simmons v. State*, 745 S.W.2d 348 (Tex.Cr.App.1987), went another step off the correct constitutional path. Simmons was convicted in two trials under two indictments for aggravated robberies of a man and a woman during the course of committing theft from the man. The court of appeals used the *Blockburger* test to overrule his double jeopardy claim. *Id.* at 350. This Court began by holding that *Crosby* controls.

As to the double-jeopardy law, the *Simmons* Court said a "second basis for reversal was found in *January v. State*, 695 S.W.2d 215 (Tex.App.—Corpus Christi, 1985), affirmed on State's petition for discretionary review in *January v. State*, 732 S.W.2d 632 (Tex.Cr.App.1987)." *Simmons v. State*, 745 S.W.2d at 351. We recognize now that the issue in *January* was not the same as that in *Simmons*.

In *January*, convictions in one trial for kidnapping and attempted capital murder in the course of kidnapping were held to violate the Double Jeopardy Clause. The Thirteenth Court of Appeals correctly looked to *In re Nielsen*, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889), in which it was held to be double jeopardy to convict a man for bigamy and then prosecute him for committing adultery, a continuous offense, with the same wife on the next day after the end of the bigamy offense. In *Nielsen* the Supreme Court held that the adultery was a necessary part of, and a lesser included offense of, the bigamy. Similarly, January's continuous kidnapping was a necessary part of the attempted capital murder of the same victim.

The *Simmons* Court misapplied *January* by saying that, just as the same adultery could not be prosecuted twice in *Nielsen*, and the same kidnapping could not be prosecuted twice in *January*, the same theft could not be used for two robberies. The difference between the cases is that *Nielsen* and *January* were prosecutions under *different statutes*, and one prosecution was for a continuous offense that functionally included the other offense, while *Simmons* was prosecuted for repeated offenses of the *same statute*, under which the question was the allowable unit of prosecution.[8]

---

7. In addition to the statements in the *Sanabria* opinion, the cases that it cites also make the point. Only two of the seven cases (*Burton* and *Nielsen* ) even contained constitutional claims, and they, like the other cases, were resolved by construction of the federal penal statutes.

8. The distinction was made in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The Court addressed two questions in *Blockburger*. The second question was whether there could be two convictions for one sale of narcotics which violated two statutes. It was resolved by the test for which the case became eponymous; *see supra* note 4.

But the first question in the case was whether two sales of narcotics to the same person on consecutive days constituted a single offense. The Court held such sales to be two offenses. The Court distinguished the continuous offense of bigamy from the offenses that can be committed *uno ictu. Id.* at 302, 52 S.Ct. 180. "The test is whether the individual acts are prohibited, or the course of action which they constitute." *Ibid.*(quoting WHARTON'S CRIMINAL LAW). This was the same principle which Justice Frankfurter called "the allowable unit of prosecution" in *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221, 73 S.Ct. 227, 97 L.Ed. 260 (1952).

The difference between the two holdings in *Blockburger* is the same as the difference between two hypothetical cases in Akhil Reed Amar, *Double Jeopardy Law Made Simple*, YALE L.J. 1807, 1817–18 (1997):

As Robert's murder/robbery hypothetical illustrates, two offenses cannot be the same if they have different legal elements. [The "*Blockburger* test."] But under the Double Jeopardy Clause, an offense must not only be the same in law—it must also be the same in fact. Even if Robert is convicted of robbery in an earlier trial, he may later be

In the third case in the line, *Cook v. State*, 840 S.W.2d 384 (Tex.Cr.App.1992), the Court turned directly to double-jeopardy law. Cook was convicted of two aggravated robberies on evidence that he committed aggravated assault of two police officers in immediate flight after the commission of a single theft. The *Cook* Court identified the issue by saying, "We are concerned here with the protection against multiple punishments for the same offense." *Id.* at 389.

But there really was no independent double-jeopardy issue in *Cook*. There was no issue of successive prosecutions because the defendant was convicted of two offenses in one trial.[9] And the issue of multiple punishments in one trial is entirely a question of legislative intent. *See Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). *Cf. Sanabria v. United States, supra.* So the determinative issue was one of state law: whether the legislature intended a person to be convicted for two robberies when he tried to injure two persons, but property was stolen only from one. If this issue of state law were resolved in Cook's favor, the Court would never reach a constitutional issue. If it were resolved against him, the double-jeopardy issue would likewise be resolved against him.

Also the statement that the Court was concerned with "multiple punishments for the same offense" assumed the answer to the actual issue that was before the court: whether the defendant's acts *were* the same offense.

The *Cook* Court also erred by relying on *January* as authority for the proposition that the Double Jeopardy Clause would be violated by using the same theft in two robbery prosecutions. As we have said above, the issue in *January* is different from the one in these robbery cases.

After reexamining the line of cases which support the applicant's claim, in the light of the controlling precedents in double-jeopardy law, we conclude that the

charged with and tried for robbery so long as the second indictment concerns a factually different robbery—committed, say, on a different day against a different victim. ... Even if the identity of the robbery victim and the day of the robbery are not formal elements of the offense of robbery—in other words, even if the legal elements in Robert's two trials are identical—Robert would have no good double jeopardy defense. He simply broke the same law twice, and thus he may be tried twice and punished twice. He may be "twice put in jeopardy of life or limb" because he committed two offenses, not one.

At times, nice "unit of prosecution" questions will arise. Are two pulls of the trigger one attempted murder or two? (Does it matter if the two pulls are aimed at two different persons; or aimed at the same person, but on different days, as parts of different schemes?) Is an ongoing course of continuous conduct one offense or several? Is marrying four women one bigamy or three? (Does it matter whether the marriages occur simultaneously or sequentially?) Is a liquor store stickup in which the robber takes money from two persons one armed robbery or two? (Does it matter whether the two are both clerks, or are instead one clerk and one store patron?)

These questions are both fascinating and difficult, but they are ultimately questions of substantive law, questions on which the Double Jeopardy Clause is wholly agnostic. The Clause takes substantive criminal law as it finds it; it is outlandish (and judicially unworkable) to suppose that hidden deep in the word "offense" lies some magic meta-theory of substantive criminal law, telling legislators in all times and places what can and cannot be made criminal. And so it is up to the legislature to decide whether planting and exploding a bomb should be one crime or two (because the bomb was first planted, then exploded) or fifty (because fifty people died) or 500 (because 450 more were at risk) or 1,000,500 (because the bomb also destroyed one million dollars of property and each dollar of bomb damage is defined as a separate offense). The Eighth Amendment's Cruel and Unusual Punishment Clause might impose limits on the total amount of punishment that can be heaped upon a person for a single "act" or series of acts, but the Double Jeopardy Clause imposes no limits on how the legislature may carve up conduct into discrete legal offense units.

9. This feature of *Cooks* is different from that of *Crosby* and *Simmons*.

double-jeopardy question depends on the allowable unit of prosecution for robbery—which is determined by construing the robbery statutes. Therefore we shall review the construction given the statutes in the same line of cases.

As to state law, this Court said in the leading case, *Ex parte Crosby,* 703 S.W.2d at 685:

> The Penal Code makes it clear that theft is an integral part of the offense of aggravated robbery. In the instant case only one theft of one person [*sic*] occurred. Thus only one aggravated robbery can have taken place. Applicants appropriated property belonging to [the husband]. The fact that they assaulted more than one person in the course of that theft does not mean that more than one aggravated robbery took place. Perhaps applicants could have been indicted for aggravated assault with respect to [the wife] but they should not have been indicted and convicted for an additional aggravated robbery.

This holding made theft the allowable unit of prosecution for robbery.

In *Simmons v. State,* 745 S.W.2d 348 (Tex.Cr.App.1987), the second case in the line, we made no new holding as to state law.

In the third case, *Cook v. State,* 840 S.W.2d 384, 387 (Tex.Cr.App.1992), we said that the State "asked us to revisit *Crosby* and *Simmons*." But the Court didn't reconsider state law at all. It recapitulated the facts and holdings of those cases, and found Cook's situation "identical to the situations in both *Crosby* and *Simmons.*"

*Id.* at 388. So the Court has never reconsidered its decision in *Crosby* that theft is the allowable unit of prosecution for robbery. As we seemed to recognize in *Cook,* such a reconsideration is in order; indeed, it is compelled because of the conflict between this line of cases and our several holdings that robbery is an assaultive offense.

The *Crosby* Court chose theft as the allowable unit of prosecution because, "The Penal Code makes it clear that theft is an integral part of the offense of aggravated robbery." *Ibid.* This statement ignored crucial changes in the law of robbery that were made in the Penal Code of 1974. It also ignored decisions of this Court to the contrary.

Theft was an integral part of robbery in the Penal Code of 1925. But the Penal Code of 1974 makes it clear that theft only has to be attempted.[10]

■ For that reason, this Court held that under the new penal code robbery is a form of assault:

> [S]ince under the common law robbery was but an aggravated form of theft, when charging robbery it was necessary to describe the property as if charging theft. This decision is still followed in cases involving Art. 1408 [of the Penal Code of 1925]. ...

The common law analysis of the nature of a robbery offense was correct under Art. 1408, supra, as the offense required a completed theft as an element of the crime. Under Sec. 29.03,

---

**10.** § 29.01. Definitions

In this chapter:

(1) "In the course of committing theft" means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft.

(2) "Property" means:

(A) tangible or intangible personal property including anything severed from land; or

(B) a document, including money, that represents or embodies anything of value.

§ 29.02. Robbery

(a) A person commits an offense if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he:

(1) intentionally, knowingly, or recklessly causes bodily injury to another; or

(2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

(b) An offense under this section is a felony of the second degree.

however, no completed theft is required. Under the new Penal Code, the offense is no longer an aggravated form of theft.

...

A description of the property involved in the robbery was required under Art. 1408 because the offense was characterized as a theft. The change in the focus of the statute, coupled with this Court's decision [that no description of the property was required] in *Reese*, [531 S.W.2d 638] compels the conclusion that the present robbery offense is assaultive in nature.

*Ex parte Lucas*, 574 S.W.2d 162, 163–64 (Tex.Cr.App.1978) (citations omitted). *Accord, Crank v. State*, 761 S.W.2d 328, 350 (Tex.Cr.App.1988) (because "the gravamen of robbery is the assaultive conduct and not the theft," fact that manager of store may have consented to theft was no defense to robbery of employee); *Hightower v. State*, 629 S.W.2d 920, 922 (Tex.Cr.App. 1981); *Rohlfing v. State*, 612 S.W.2d 598, 602 (Tex.Cr.App.1981) (" The current penal code robbery offenses are assaultive in nature and are not aggravated forms of theft"); *Evans v. State*, 606 S.W.2d 880, 882 (Tex.Cr.App.1980) ("under the new Penal Code, robbery is an assaultive offense and no longer an aggravated form of theft"); *Smallwood v. State*, 607 S.W.2d 911, 912 (Tex.Cr.App.1979).

So the "theft is only the underlying offense for the robbery." *Linville v. State*, 620 S.W.2d 130, 131 (Tex.Cr.App.1981). Robbery is a form of assault. *Hightower*, 629 S.W.2d at 922.

The concurrence argues that robbery should not be considered a form of assault because it appears in Title 7 of the Penal Code with theft and other offenses against property, while assault appears in Title 5. *Post* at 3. A similar argument was made and rejected in another context in *Chestnut v. State*, 567 S.W.2d 1, 2 (Tex.Cr.App. 1978).

Although robbery and aggravated robbery are classified as offenses against property, V.T.C.A., Penal Code Title 7, the taking of property is no longer an essential element of the offense. *Earl v. State*, Tex.Cr.App., 514 S.W.2d 273. The primary interest protected by the robbery offenses is the security of the person from bodily injury or threat of bodily injury that is committed in the course of committing theft. V.T.C.A., Penal Code Secs. 29.02, 29.03. The security of the person from such injury and threats is also the central interest protected by the assault provisions of the code, and much of the statutory language is the same. Compare, Secs. 22.01 and 22.02 with 29.02 and 29.03, supra.

The placement of robbery in Title 7, even though it is essentially a form of assault, allowed the joinder of repeated robberies under the original statutes for the joinder of offenses which allowed the joinder of only Title 7 offenses.[11] This may be relevant to the legislative decision.

■■■ Since the present robbery offense is no longer a form of theft, the allowable unit of prosecution should not be "one theft of one person," as *Crosby* held. Since robbery is a form of assault, the allowable unit of prosecution for robbery should be the same as that for an assault. And in Texas the allowable unit of prosecution for an assaultive offense is each victim. *See Phillips v. State*, 787 S.W.2d 391, 394–95 (Tex.Cr.App.1990) (assault); *Ex parte Rathmell*, 717 S.W.2d 33, 36 (Tex.Cr.App.1986) (voluntary manslaughter).

Because the *Crosby* definition of the allowable unit of prosecution for robbery was contrary to the statutory and decisional law of this state, that case was incorrectly decided and is in conflict with our other decisions. Although we have been

---

**11.** *See* Penal Code Act of 1973, 63d Leg., R.S., ch. 399, § 1, secs. 3.01 & 3.02, 1973 Tex. Gen. Laws 883, 891, *amended by* Act of June 17, 1987, 70th Leg., R.S., ch. 387, § 1, 1987 Tex. Gen. Laws 1900.

asked to reconsider this point, we never have actually done so before today. The holding of *Crosby*, that the Double Jeopardy Clause is violated by multiple prosecutions for robbery when multiple assaults are committed in the course of only one theft, is overruled, as are *Simmons* and *Cook*, which followed it, and which were mistaken as to double-jeopardy law.

The concurrence maintains that the Court should deny the applicant's claim of being twice prosecuted for the same offense because the State's pleadings in his prosecutions alleged different owners of property in the two robberies, while the pleadings in *Crosby*, *Cook*, and *Simmons* alleged the same owner of property in the two robberies. *See post* at 562–563.[12] The concurrence does not explain why the Fifth Amendment right of the applicant to be free from a second conviction for one robbery should be defeated by this difference in pleadings. To paraphrase the concurrence, *post* at 562, "Simply alleging that a different person [was the owner] cannot turn one property offense into two." *Cf. Ladner v. United States*, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958) (single shotgun blast at multiple federal law enforcement agents is a single assault, even though different victim was alleged in each count). If there was only one theft, which we understand to be the fact from the trial court's findings, the issue presented in *Crosby*, *Cook*, and *Simmons* is squarely before us.

Prosecuting the applicant twice for robbery did not violate the Double Jeopardy Clause of the Fifth Amendment because the allowable unit of prosecution for robbery is each victim, and he assaulted two victims in the course of committing a theft.

Relief is denied on the findings of the trial court.

MEYERS, J., filed a concurring opinion.

JOHNSON, J., filed a concurring opinion.

MEYERS, J., delivered a concurring opinion.

Applicant pleaded guilty to two separate indictments. The first indictment alleged that he committed aggravated robbery of Gilberto Trevino, III, on or about January 3, 1993. The second alleged that he committed aggravated robbery of Chris Shipman on the same date. Based on applicant's guilty pleas, the trial court sentenced him to two concurrent life terms.

Applicant argues on collateral attack that each indictment alleged the "same offense," inasmuch as each involved the same underlying theft. He therefore maintains that he is being punished twice for the same offense in violation of the Double Jeopardy Clause of the Federal Constitution.

By pleading guilty to two separate indictments, applicant conceded guilt to two separate offenses and thereby affirmatively relinquished his right to assert a double jeopardy claim on collateral attack. *United States v. Broce*, 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989). *Broce* is directly on point with the facts of this case. The defendants in *Broce* were charged in separate indictments with "concerted acts to rig bids and suppress competition in violation of the Sherman Act." *Id.* at 565–68, 109 S.Ct. at 760–62. They later pleaded guilty to the two indictments in a single proceeding. *Id.* Convictions were entered

---

12. The concurrence does not phrase its argument in this fashion. It repeats the statement of the *Crosby* Court as a fact that both indictments of Crosby alleged the "aggravated robbery of W.H. Thurston," *post* at 3, thereby perpetuating a classic example of assuming the conclusion of the argument as a premise (*petitio principii*; literally, "begging the question"). The indictments in both cases actual-ly alleged, of course, that W.H. Thurston was the owner of property ("property of W.H. Thurston"). *Crosby*, 703 S.W.2d at 684 nn. 1 & 2. One indictment went on to allege that he also was assaulted, while the other indictment alleged that Mary Alice Thurston was assaulted. This presented, not resolved, the question of who was robbed in such a set of facts.

on the pleas and the District Court sentenced Broce to concurrent sentences and a fine on each count. *Id.* On collateral attack, the *Broce* defendants sought to vacate their sentences on the ground that the bid-rigging schemes alleged in each indictment was but a single conspiracy. *Id.* They therefore maintained that they were being punished twice for a single conspiracy in violation of the Fifth Amendment's Double Jeopardy Clause. The Tenth Circuit granted relief, noting that while double jeopardy protection could be waived, the defendants' guilty pleas did not constitute such a waiver. *Id.*

The Supreme Court reversed the judgment of the Court of Appeals, holding that the defendants' double jeopardy claim was barred in light of their guilty pleas to the two indictments. *Id.* The Court concluded that the nature of a guilty plea foreclosed any opportunity to collaterally attack the basis for conviction where the pleas were for facially distinct offenses. Specifically, the Court wrote: "Just as a defendant who pleads guilty to a single count admits guilt to the specified offense, so too does a defendant who pleads guilty to two counts with facial allegations of distinct offenses concede that he has committed two separate crimes." *Id.,* at 570, 109 S.Ct. at 763. Moreover, the Court held that the fact that the defendants did not specifically and consciously waive their rights to be free from double jeopardy was of no consequence. The Court suggested that the relinquishment of those rights was implicit in the defendants' counseled pleas of guilty. *See id.,* at 573–74, 109 S.Ct. at 764 ("Relinquishment derives not from any inquiry into a defendant's subjective understanding of the range of potential defenses, but from the admissions necessarily made upon entry of a voluntary plea of guilty"). In other words, by entering guilty pleas to the two indictments, the *Broce* defendants conceded guilt to each offense and affirmatively relinquished all defenses that were inconsistent with that plea.[1] Thus, the only grounds still open to those defendants was an attack directly on the voluntary and intelligent nature of the guilty plea itself. Because the defendants made no such claims, the Court concluded

---

1. The Fifth Amendment's double jeopardy protection "represents a fundamental ideal in our constitutional heritage." *Benton v. Maryland,* 395 U.S. 784, 797, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969). As a fundamental right, that protection is not subject to the restrictions of the general rule of procedural default and is not subject to waiver strictly because a defendant failed to object at trial. *See Marin v. State,* 851 S.W.2d 275, 278 (Tex. Crim.App.1993). Instead, in order for a defendant to relinquish his rights under the Double Jeopardy Clause, he must make some sort of explicit waiver of those rights. *See Green v. United States,* 355 U.S. 184, 191–92, 78 S.Ct. 221, 225–26, 2 L.Ed.2d 199 (1957). However, as *Broce* illustrates, that relinquishment need not be a conscious waiver of the *specific defense* of double jeopardy. Instead, in order to "waive" his rights under the Double Jeopardy Clause within the meaning of *Marin,* a defendant must take *some affirmative action* inconsistent with those constitutional rights. *See, e.g., Ricketts v. Adamson,* 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987) (defendant breached plea agreement entered into knowingly and voluntarily that explicitly conditioned defendant's more lenient sentence on agreement to testify against co-defendants); *United States v. Scott,* 437 U.S. 82, 98–99, 98 S.Ct. 2187, 2197–98, 57 L.Ed.2d 65 (1978) (defendant successfully moved to dismiss indictment "on a basis unrelated to factual guilt or innocence of the offense of which he is accused"); *Jeffers v. United States,* 432 U.S. 137, 152–53, 97 S.Ct. 2207, 2217–18, 53 L.Ed.2d 168 (1977) (plurality opinion) (defendant successfully opposed Government's motion to consolidate two offenses into one trial); *United States v. Dinitz,* 424 U.S. 600, 609–10, 96 S.Ct. 1075, 1080–81, 47 L.Ed.2d 267 (1976) (defendant successfully moved for mistrial); *see also United States v. Devine,* 934 F.2d 1325, 1342–43 (5 th Cir.1991) (holding defendant did not waive protection against multiple punishments because "no evidence of any affirmative act [by defendant] that might be construed as a voluntary and knowing waiver of [that right]"). Where a defendant takes no affirmative action that could be construed as a "waiver," this Court has repeatedly been willing to address the merits of a double jeopardy claim for the first time in a writ petition. *See Ex parte Ervin v. State,* 991 S.W.2d 804 (Tex.Crim.App.1999); *Ex parte Evans,* 530 S.W.2d 589, 591 (Tex.Crim.App. 1975).

that they were not entitled to relief. *Id.*, at 574, 109 S.Ct. at 765.

The application at bar is governed by the principles articulated in *Broce*. Applicant affirmatively relinquished any double jeopardy protection when he made his knowing and intelligent plea of guilty to two facially distinct indictments. "A failure by counsel to provide advice may form the basis of a claim of ineffective assistance of counsel, but absent such a claim it cannot serve as the predicate for setting aside a valid plea." *Id.* Therefore, the majority has no business reaching the merits of applicant's jeopardy arguments. Based on the Supreme Court's holding in *Broce*, I would deny relief. I concur only in the Court's judgment.

JOHNSON, J., filed a concurring opinion.

I concur in the judgment only. In concluding that applicant's double jeopardy rights have not been violated, the majority paints with too broad a brush, both judicially rewriting part of our penal code and overruling properly decided cases which need not even be considered in the instant case.

We recently noted that "[a] defendant suffers multiple punishments in violation of the Double Jeopardy Clause when he is convicted of more offenses than the legislature intended." *Ervin v. State*, 991 S.W.2d 804, 807 (Tex.Crim.App.1999) (citing *Ball v. United States*, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985)). The United States Supreme Court has stated that

> [b]ecause it was designed originally to embody the protection of the common-law pleas of former jeopardy, the Fifth Amendment double jeopardy guarantee serves principally as a restraint on courts and prosecutors. The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments; but once the legislature has act-

ed courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial.

*Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). The central error the majority makes today is its conclusion that "[r]obbery is a form of assault." *Ante*, at 560.

TEX. PEN.CODE § 29.02, titled "Robbery," provides that

> (a) A person commits an offense if, *in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property*, he:
> (1) intentionally, knowingly, or recklessly causes bodily injury to another; or
> (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

(Emphasis added.) TEX. PEN.CODE § 22.01, titled "Assault," provides that

> (a) A person commits an offense if the person:
> (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;
> (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or
> (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

Clearly assault and robbery have elements in common. Indeed, under a *Blockburger*[1] analysis, assault is considered a lesser-included offense of robbery. However, to say that robbery is "a form of assault" is to go too far.

Assault is contained in Chapter 22 of our penal code, which is titled "Assaultive Of-

---

1. *See Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

fenses." Chapter 22 is part of Title 5 of the penal code, which is titled "Offenses Against the Person." In contrast, robbery is contained in Chapter 29 of the penal code, which is titled "Robbery." Chapter 29 is part of Title 7 of the penal code, which is titled "Offenses Against Property." The robbery statute specifically refers to Chapter 31 of the penal code (Theft), but makes no reference to either Chapter 22 or Title 5. The very structure of the robbery statute indicates that the primary focus is on the theft rather than the assault. Had the legislature meant for robbery and aggravated robbery[2] to be categorized as assaultive offenses, it certainly could have, but it chose instead to categorize them as offenses against property.

It is true, as the majority notes, that a number of our cases since 1974 have characterized robbery as being assaultive in nature. However, the underlying rationale of these cases does not withstand scrutiny. All of them cite as authority, either directly or indirectly, our decision in *Earl v. State,* 514 S.W.2d 273 (Tex.Crim. App.1974).[3] In *Earl,* the defendant was convicted of aggravated robbery. *Earl,* 514 S.W.2d at 273. On appeal, he alleged that the indictment against him was defective for failure to allege the elements of the offense of theft. *Id.* In affirming the conviction, we noted that

> the actual commission of the offense of theft is not prerequisite to commission of a robbery ... Of course it must be alleged and proven that the alleged offense was committed 'in the course of committing a theft' and 'with intent to obtain or maintain control of the property' involved in the theft. Although the proof will involve proving up a theft or

attempted theft, the elements of the particular theft ... or attempted theft ... need not be alleged in the indictment.

*Id.* at 274. Nothing in *Earl* suggests that the gravamen of robbery is assault, rather than theft. Thus, the argument in *Chestnut,* 567 S.W.2d at 2, that robbery is assaultive in nature because "the taking of property is no longer an essential element of the offense," is wholly undermined by the above quote in *Earl,* i.e., the fact that two of the essential elements of robbery are the commission of theft, as defined in Chapter 31 of the penal code, and the intent to obtain or maintain control of property. *See* TEX. PEN.CODE § 29.02. The focus of the robbery statute remains the offense against property.

Because of the legislature's choice, the cases which the majority today overrules were correctly decided. They are also distinguishable and inapplicable to the instant case. In *Ex parte Crosby,* 703 S.W.2d 683, 684 (Tex.Crim.App.1986), the defendants pled guilty to two counts of aggravated robbery. The first indictment alleged that the defendants committed aggravated robbery of W.H. Thurston and caused serious bodily injury to W.H. Thurston. *Id.* The second indictment alleged that the defendants committed aggravated robbery of W.H. Thurston and caused serious bodily injury to Mary Alice Thurston. *Id.* As we noted, "each applicant was convicted twice for the aggravated robbery of W.H. Thurston. The only difference in the offenses charged was the person alleged in the indictments to have suffered serious bodily injury." *Id.* Thus, it is not surprising that we found that the defendants' double-jeopardy rights had been violated. As we stated, "[O]nly one theft of one person

---

**2.** *See* TEX. PEN.CODE § 29.03.

**3.** *See, e.g., Crank v. State,* 761 S.W.2d 328, 350 (Tex.Crim.App.1988) (citing, *inter alia, Evans v. State, infra*), *cert. denied,* 493 U.S. 874, 110 S.Ct. 209, 107 L.Ed.2d 162 (1989); *Hightower v. State,* 629 S.W.2d 920, 922 (Tex.Crim.App. 1981) (citing *Ex parte Lucas, infra*); *Smallwood v. State,* 607 S.W.2d 911, 912 (Tex.Crim.

App.1979) (citing *Ex parte Lucas, infra*); *Evans v. State,* 606 S.W.2d 880, 882 (Tex.Crim. App.1980) (citing *Ex parte Lucas, infra*); *Ex parte Lucas,* 574 S.W.2d 162, 164 (Tex.Crim. App.1978) (citing, *inter alia, Earl v. State*); *Chestnut v. State,* 567 S.W.2d 1,2 (Tex.Crim. App.1978) (citing *Earl v. State*).

occurred. Thus, only one aggravated robbery can have taken place." *Id.* at 685. Simply alleging that a different person suffered serious bodily injury cannot turn one property offense into two.[4]

Similarly, in *Simmons v. State,* 745 S.W.2d 348 (Tex.Crim.App.1987), the defendant was convicted of two counts of aggravated robbery. The first indictment on which the defendant was convicted alleged that he committed theft and threatened and placed Norma Joe Nichols in fear of serious bodily injury and death. *Id.* at 349–50. The second indictment on which the defendant was convicted alleged that he committed theft and threatened and placed Bruce Nichols in fear of serious bodily injury and death. *Id.* at 350. Although neither indictment alleged against whom the theft had been committed, we noted that "the State used the theft of money from [Bruce] Nichols as the theft allegation necessary for both of the aggravated robbery charges." *Id.* at 350. Again, we found that the defendant's double-jeopardy rights had been violated, because both convictions rested on the same theft of Bruce Nichols. *Id.* at 352.

Finally, in *Cook v. State,* 840 S.W.2d 384 (Tex.Crim.App.1992), the defendant was convicted of two counts of aggravated robbery. The first indictment on which the defendant was convicted alleged that she had committed aggravated robbery of Charlotte Mann and caused serious bodily injury to M.L. Pierce. *Id.* at 388. The second indictment on which the defendant was convicted alleged that she had committed aggravated robbery of Charlotte Mann and caused serious bodily injury to G.C. Sanchez. *Id.* As we noted, "there was only one theft from one individual."

*Id.* Thus, "[b]ecause there was only one theft in this case, there can be only one conviction for aggravated robbery, regardless of the number of victims of the assaultive conduct." *Id.* at 389.

The aforementioned cases are wrongly decided only if robbery is a form of assault. But, as noted above, the legislature, the body responsible for creating and defining offenses, made it a property offense. *Willis v. State,* 790 S.W.2d 307, 314 (Tex.Crim. App.1990). Thus, contrary to the majority's position, the "allowable unit of prosecution" for robbery is based not on each victim of the assaultive conduct, but on the theft. There was a double-jeopardy violation in these cases because in each there were two indictments against the defendants, each alleging the same property offense against the same person but with a different victim of the alleged assault. On this basis, the instant case is both factually and legally distinguishable from the above cases and does not involve a double–jeopardy violation. In this case, although the precise facts are not clear,[5] one of the aggravated–robbery indictments alleged that applicant committed theft of property from Gilberto Trevino III while threatening and placing Trevino in fear of imminent bodily injury and by using a firearm. The second aggravated–robbery indictment alleged that applicant committed theft of property from Chris Shipman while threatening and placing Shipman in fear of imminent bodily injury and by using a firearm. Unlike *Crosby, Simmons* and *Cook,* the two indictments here alleged two separate and distinct property offenses.

4. The majority's "paraphrase" of this sentence significantly distorts its meaning. *See ante,* at 561.

5. The majority suggests that, based on the trial court's findings of fact at the habeas hearing, it is clear that only one theft took place. *Ante,* at 561. However, those findings are not a model of clarity. According to the findings, "The facts of this case indicate that

applicant held a gun to the head of Trevino and led him to the cashier, Chris Shipman and pointed the gun at both of them as the bag was filled." Although the judge found that there were "two separate and distinct complaining witness[es] in these cases," it is unclear whether there were actually two aggravated robberies, or an aggravated robbery and an aggravated assault.

Because applicant plead guilty to two separate allegations of aggravated robbery of two different persons, there is no double-jeopardy violation.[6] Based on the foregoing, I concur only in the judgment.

---

**6.** In *Crosby*, we noted that although there was a double jeopardy violation based on two convictions of aggravated robbery of the same person, W.H. Thurston, it may have been possible for the state to have indicted the defendant for aggravated assault with respect to Mary Alice Thurston. *Crosby*, 703 S.W.2d at 685. There may be a similar issue lurking in the present case. *See supra* note 5. However, that issue is not before this court. Unlike the indictments in *Crosby*, the indictments in the instant case do not, on their faces, violate applicant's double-jeopardy rights. Furthermore, as the Court of Appeals found on direct appeal, applicant's written and signed judicial confessions to the two counts of aggravated robbery were sufficient to support his guilty pleas. *Hawkins v. State*, Nos. 05–95–01510–CR, 05–95–01511–CR, 05–95–01512–CR, slip op. at 3 (Tex.App.—Dallas February 20, 1998, no pet.) (not designated for publication), 1998 WL 70641, at *1.