11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Damon Lee Maize

Appellant

Vs.                   Nos.
11-00-00340-CR and 11-00-00341-CR B Appeals from Dallas County

State of Texas

Appellee

 

The jury
convicted Damon Lee Maize of capital murder and attempted capital murder and
assessed his punishment at life imprisonment for each offense; and, in the
attempted capital murder conviction, a fine of $10,000 was also imposed.  We affirm.

In his first
and second points of error, appellant challenges the legal and factual
sufficiency of the evidence to prove that Aappellant killed [Rogelio Rios] in the course of robbing [him].@ 
Specifically, appellant claims that the evidence is both legally and
factually insufficient to show that he or his codefendant robbed, or attempted
to rob, Rios.  

When an
appellant raises both legal and factual sufficiency challenges, we first
evaluate the legal sufficiency.  See Clewis
v. State, 922 S.W.2d 126, 133 (Tex.Cr.App.1996).  We review all of the evidence in the light most favorable to the
verdict to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 319 (1979).  See also Clewis v. State, supra at
132.  In reviewing the factual
sufficiency of the evidence, we conduct a neutral review of the trial court=s findings and determine whether the proof of
guilt is so weak as to undermine the confidence in the jury=s determination or whether the proof of guilt
is heavily outweighed by contrary proof. 
See Johnson v. State, 23 S.W.3d 1, 11 (Tex.Cr.App.2000).

Maria
Martinez owned the El Taquito Restaurant. 
She employed Rogelio Rios as a cook. 
Martinez knew appellant=s codefendant, Derick Logan. 
Logan normally came into the restaurant on weekends from Martinez=s brother=s bar.  Logan not only worked
for Martinez=s brother at a nearby bar but was also the
brother=s friend. 








On the
morning of the offenses, Martinez attempted to lock the front door to the
restaurant, but the door did not lock. 
Logan came into the restaurant and demanded money from Martinez at
gunpoint.  Logan was accompanied by
another man identified by Martinez as appellant.  Logan forced Martinez into her office at gunpoint.  Appellant also brought Rios to the office at
gunpoint.  Again, Logan demanded money
from Martinez.  Martinez offered the men
the money bag containing money for daily expenses, but Logan demanded to get
into the safe.  Martinez told Logan that
she did not have the key to the safe. 
Logan then shot her in the shoulder. 
She heard another shot and heard someone say:  AShoot >em.@  The
pair then beat her on the head.  She
passed out; and, when she regained consciousness, Martinez saw that Rios had
been shot in the head.  The assailants
had also taken the money bag. 

Martinez
first identified Logan as one of the perpetrators when she had a conversation
with Dallas County Deputy Sheriff Michael Ramirez in the emergency room.  Deputy Ramirez was not on duty at the
time.  Later, Martinez identified Logan
to the police as one of the gunmen, and she also described the second gunman.  She identified Logan from a photo lineup,
and she viewed other photo lineups in an attempt to identify the second
gunman.  Later, Martinez identified
appellant from a photo lineup. 

The
casings and bullets recovered from the scene were all fired from the same .380
caliber weapon.  Before the date of the
offenses, Logan had asked Deputy Ramirez about a .380 caliber weapon.  Deputy Ramirez had never seen Logan with a
gun while he worked as a security guard at Martinez=s brother=s bar but had seen him with a gun in the restaurant.  Martinez=s brother also testified that he and Logan went to gun shows together
and that he had seen Logan purchase and possess guns, but never a .380 caliber
weapon.  We have reviewed the entire
record. The evidence is both legally and factually sufficient to support the
verdict.  








The
evidence shows that appellant and Logan took money from the restaurant while
holding the owner and an employee at gunpoint in the course of the offense
shooting both of them.  The owner
survived, but the employee was killed. 
Both Martinez and Rios, as owner and as employee, had a greater right to
the restaurant=s money than appellant or Logan.  A property Aowner@ is any Aperson who has title to the property, possession of the property,
whether lawful or not, or a greater right to possession of the property than
the actor.@  TEX.
PENAL CODE ANN. ' 1.07(a)(35)(A) (Vernon 1994).  A Aspecial owner@ is an
individual, such as an employee, who is in 
the care, custody, or control of the property belonging to another
person or a corporation.  Harrell v.
State, 852 S.W.2d 521, 523 (Tex.Cr.App.1993); Liggens v. State, 50 S.W.3d 657,
660 (Tex.App. B Fort Worth 2001, pet=n ref=d).  AA store employee has sufficient interest in
property taken during the course of a robbery to qualify as an owner of the
property.@  Liggens
v. State, supra at 660.  Because Rios
had a greater interest than appellant or Logan in the restaurant=s money, Rios was the victim of a robbery;
and it was appropriate for the State to plead that Rios, instead of Martinez,
was the victim of the robbery.  See Ex
parte Hawkins, 6 S.W.3d 554, 560 (Tex.Cr.App.1999).  Appellant=s first and second points of error are overruled.

In his
third and final point of error, appellant argues that the evidence is Afactually insufficient to prove appellant=s identity as one of the gunmen involved@ in the robbery and shooting.  Specifically, appellant argues that the
identifications made by Martinez and Calandra Bell are not credible.

Martinez
was shot and beaten on the head during the offenses.  When the first officer arrived at the scene, Martinez stated that
she did not know her attackers but described them to the officer.  When first interviewed at the hospital,
Martinez again described her attackers while she came in and out of
consciousness.  She first identified Logan
in a conversation with Deputy Ramirez in the emergency room.  Deputy Ramirez was a friend of Martinez. 

Logan was
arrested during the investigation of an anonymous phone call placed from an
apartment shared by Brenda Thompson and Bell. 
Martinez identified appellant from a photographic lineup.  

At the
pretrial identification hearing, Martinez identified appellant from the
photographic lineup but was unable to recognize him within the courtroom.  Martinez was experiencing dizziness as a
result of her injuries at the time of the hearing.  At trial, Martinez identified appellant as the second gunman and
explained the dizzy spell at the pretrial hearing.  

Bell had a
criminal record for check forgery, which she admitted was a crime of
deception.  She had approximately ten
forged check cases.  At the time of
trial, she had the following cases pending: 
a check forgery, organized crime, and escape. 








Bell first
contacted the police after the arrest of Logan and then gave the information
she had to Crime Stoppers.  Bell
provided a statement connecting appellant to the offenses.  There are discrepancies between her
statement to the police and her trial testimony in regard to the dates that
events occurred.  At trial, Bell
testified that she had heard appellant and Logan discussing the crime and that
they laughed about appellant vomiting in the alley behind the restaurant
following the commission of the offenses. 


Appellant
produced witnesses who testified that he wore his hair short, not down to his
shoulders or collar as described by Martinez. 
The murder weapon was never recovered; and there was no physical
evidence, such as fingerprints at the restaurant, connecting appellant to the
offenses.  The only evidence connecting
appellant to the offenses was the testimony of Martinez and Bell.

We have
reviewed the entire record according to the standard stated in response to
appellant=s first and second points of error.  The weight to be given to testimonial
evidence is within the sole province of the jury because the weight turns on
the jury=s evaluation of witness credibility and
demeanor.  Cain v. State, 958 S.W.2d
404, 408-09 (Tex.Cr.App.1997).  It is
clear that the jury here chose to accept the testimony proffered by Martinez
and Bell and to reject the testimony proffered by appellant=s witnesses and that that testimony is
sufficient to sustain the verdict. 
Edwards v. State, 344 S.W.2d 687, 689 (Tex.Cr.App.1961).  The evidence connecting appellant to the offenses
is not so obviously weak as to undermine the jury=s determination, and the evidence of appellant=s guilt in connection with the offenses is
not greatly outweighed by contrary proof. 
Johnson v. State, supra at 11. 
Appellant=s third point of error is overruled.

The
judgments of the trial court are affirmed.

 

JIM
R. WRIGHT

JUSTICE

 

February 28, 2002

Do not publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of: Arnot, C.J., and

Wright, J., and McCall, J.