COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-260-CR

MIKAL WALI NAJI APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

A jury convicted Appellant Mikal Wali Naji of aggravated robbery with a deadly weapon and aggravated assault with a deadly weapon, charged in a single indictment.  Upon his plea of true to the repeat offender notice, the jury assessed punishment of seventy years’ confinement in the Institutional Division of the Texas Department of Criminal Justice and a $10,000 fine on each count, with the sentences to be served concurrently.  In two issues, Appellant contends that the convictions for both aggravated robbery with a deadly weapon and aggravated assault with a deadly weapon violate the constitutional protections against double jeopardy and that the evidence is factually insufficient to show that he was involved in the alleged offenses.  Because we hold that convictions for both aggravated robbery with a deadly weapon and aggravated assault with a deadly weapon violate double jeopardy protections and that the evidence is factually sufficient to confirm Appellant as one of the parties to the crime, we modify the judgment to delete the conviction for aggravated assault with a deadly weapon and affirm the judgment as modified.

On June 29, 2003, the complainant Armaster Lusk was shot in an incident involving Nicholas Fountain and Appellant.  Lusk had known Fountain for about ten years but had met Appellant only a few times.  At trial, Lusk’s fiancée Felicia Atkins testified that on Friday, two days before the shooting, Lusk had come into the liquor store where she worked.  Atkins stated that Fountain and Appellant also came into the store while Lusk was there.  Lusk bought some gin, which he paid for in cash.  Lusk was carrying about $5900.  According to Atkins,  Fountain and Appellant were facing Lusk when he paid for the gin.  Lusk testified that Fountain and Appellant did not come into the store but remained outside.

On the following Sunday, Fountain and Appellant showed up at Atkins and Lusk’s apartment.  Lusk answered the door and Atkins stayed in the bedroom.  Atkins could hear Lusk and the other men talking and watching television.  After about thirty minutes, Atkins went into the kitchen to eat.  She saw Fountain and Appellant in the living room with Lusk.  She then began ironing clothes with her back to the men.  While she was ironing, Appellant got up and went to the bathroom.  Atkins heard the toilet flush and then heard someone say, “Get down.”  She turned and saw that Appellant had a towel wrapped around his right hand.  Lusk testified that he saw that Appellant had a gun in the towel.  Atkins stated that Appellant pointed his hand toward Lusk, and she heard a bang.  She then heard Lusk go out the front door.  Lusk ran to another apartment for help.

Fountain, who now had the gun, ran toward her and shoved her down.  She heard Appellant say that “he [Lusk] got away.”  She testified that Appellant came into the kitchen, took the gun from Fountain, kicked her in the side, and shot at her, although she also testified that she had previously told the police that Fountain had shot at her.  The bullet did not hit Atkins.  She heard the two men running to the bedroom.  She also heard noises like things were being thrown around the apartment and heard Appellant say, “It’s not here.  I don’t see it.  It’s not here.”  A few minutes later, she heard them run out.  She got up, locked the door, and called 911.  Nothing in the apartment was missing.  The $5,900 was in the pocket of the pants Lusk was wearing.

Officer Brad Patterson visited Lusk in the hospital on the day of the shooting.  At that time, Lusk told Patterson that Fountain had shot him.  On July 8, Lusk identified both Fountain and Appellant in a photo spread.  Atkins also looked at photo spreads and identified Fountain but was unable to identify Appellant and instead identified another man in the spread.  Based on Lusk’s identification, an arrest warrant was obtained for Appellant.

In September 2003, Fountain committed suicide.

Appellant was charged on three counts; the first count was waived.  In count two, Appellant was charged with

INTENTIONALLY OR KNOWINGLY, WHILE IN THE COURSE OF COMMITTING THEFT OF PROPERTY, AND WITH INTENT TO OBTAIN OR MAINTAIN CONTROL OF SAID PROPERTY, THREATEN[ING] OR PLAC[ING] ARMASTER LUSK IN FEAR OF IMMINENT BODILY INJURY OR DEATH, AND THE DEFENDANT USED OR EXHIBITED A DEADLY WEAPON, TO-WIT:  A FIREARM.  

In count three, he was charged with 

INTENTIONALLY OR KNOWINGLY CAUS[ING] BODILY INJURY TO ARMASTER LUSK BY SHOOTING HIM WITH A DEADLY WEAPON, TO-WIT:  A FIREARM, AND THE DEFENDANT DID USE OR EXHIBIT A DEADLY WEAPON DURING THE COMMISSION OF THE ASSAULT, TO-WIT:  A FIREARM.

Appellant argues that the double punishment for the same conduct of using a firearm to place Lusk in fear of bodily injury or death violates the double jeopardy clause.  The evidence is undisputed that the firearm was brandished and fired during the course of committing the robbery.  The State argues that because of the manner in which it pled aggravated robbery, it was free to prosecute for the aggravated assault as well.  That is, the State argues that there were actually two separate offenses, aggravated robbery and aggravated assault, because the aggravated assault occurred when Appellant first shot Lusk in the back, when Lusk could not have perceived any threat, and the aggravated robbery occurred when Lusk turned around.

The Texas Court of Criminal Appeals has held that “[r]obbery is a form of assault.”
(footnote: 2)  The gravamen of robbery is the assaultive conduct and not the theft.
(footnote: 3)  The allowable unit of prosecution is the complainant.
(footnote: 4)  Because robbery is an assaultive offense, there is no robbery without an assault.  Consequently, the aggravated assault in this case was a necessary part of the aggravated robbery.

We reject the State’s argument that the aggravated assault and the aggravated robbery occurred sequentially in time and are thus separate offenses.  In 
Brown v. Ohio
,
 
a case in which the defendant was convicted of both auto theft and joyriding after a nine-day spree, in overturning the auto theft conviction, the United States Supreme Court held that “[t]he Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units.”
(footnote: 5)  In 
Hawkins
, the Texas Court of Criminal Appeals noted, ”Although 
Brown
 is best known for its discussion of greater and lesser offenses, it is also significant for its continued insistence that when a statute sets no temporal limits on an offense, a prosecutor may not bring multiple charges by arbitrarily dividing a range of time into separate fragments.”
(footnote: 6) The aggravated robbery statute provides no temporal limits other than that the assault must occur “in the course of committing theft.”
(footnote: 7)  “‘In the course of committing theft’ means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft.”
(footnote: 8)  Evidence was admitted from which the jury could conclude that taking Lusk’s money was Appellant’s sole objective and that his entry into Lusk’s apartment and assault of Appellant were in furtherance of that single objective.

In 
Lopez v. State
, the Texas Court of Criminal Appeals explained,

[T]he offer to sell and the possession of drugs to complete that specific sale is one single offense.  Although the State may charge the offense as being committed in either of these modes, it cannot obtain two convictions for the same sale under Section 481.112(a).  The entry of two convictions in this case violates double jeopardy under the 
Blockburger
 test because the steps in this single drug transaction were all 
“the result of the original impulse,”
 and therefore each step was not a “new bargain.”
(footnote: 9)

In the case now before this court, aggravated robbery was the goal.  When Appellant shot Lusk, he did so in furtherance of that goal.  The shooting was just a “step along the way.”
(footnote: 10)  The State cannot create two separate offenses by pleading use and exhibition of a firearm in the robbery and shooting with a firearm as separate offenses.  Aside from the fact that Lusk said he saw the gun wrapped in a towel before the shot was fired, the aggravated robbery was a single assaultive event.  Even if Lusk had not seen the firearm before he was shot, use or exhibition of the firearm at any time during the robbery would satisfy the requisites of proof of aggravated robbery.
(footnote: 11)
 We hold that Appellant’s convictions for both aggravated robbery and aggravated assault of the same person during a single transaction violate double jeopardy prohibitions, regardless of the fact that the State alleged in the aggravated robbery count that Appellant “used or exhibited” the firearm but more specifically alleged in the aggravated assault count that Appellant shot Lusk.
(footnote: 12)  We sustain Appellant’s first issue.

The law provides that we must retain the conviction for the most serious offense and set the other aside.
(footnote: 13)  The most serious offense is the conviction for which the greatest sentence was assessed.
(footnote: 14)  In this case, the sentences are identical.  Consequently, we retain the aggravated robbery conviction and sentence and vacate the aggravated assault conviction and sentence.  We do so not because aggravated robbery is a first-degree felony and aggravated assault is only a second-degree felony but because the aggravated robbery charge appears in the first live count of the indictment.
(footnote: 15)  The judgment as modified shall reflect only a conviction for the aggravated robbery with a deadly weapon and the related sentence of seventy years’ confinement and a $10,000 fine.
(footnote: 16)
 In his second issue, Appellant argues that the evidence is factually insufficient to support the witnesses’ identification of him as the robber.  Appellant focuses on the conflicts in the evidence.  Specifically, Appellant points out that Atkins was unable to pick his photograph out of a photo spread soon after the offense and that Lusk told the investigating officer, Brad Patterson, that Fountain, not Appellant, was the assailant.  Atkins identified Appellant at trial as the assailant.  Lusk also identified Appellant at trial and stated that he was “out of it” when he had talked to Patterson.  Resolving conflicts in the evidence is the jury’s job, not ours.
(footnote: 17)  Applying the appropriate standard of review,
(footnote: 18) we hold that the evidence is factually sufficient to support Appellant’s conviction for aggravated robbery with a deadly weapon.  We overrule Appellant’s second issue.

Having sustained Appellant’s first issue and overruled his second issue, we modify the trial court’s judgment to vacate the conviction and sentence for aggravated assault with a deadly weapon and to reflect only the conviction for aggravated robbery with a deadly weapon and the related sentence of seventy years’ confinement and a $10,000 fine.  We affirm the trial court’s judgment as modified.

LEE ANN DAUPHINOT

JUSTICE

PANEL B: DAUPHINOT, WALKER, and MCCOY, JJ.

WALKER, J. concurs without opinion.

MCCOY, J. concurs without opinion.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  April 26, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Ex parte Hawkins
, 6 S.W.3d 554, 560 (Tex. Crim. App. 1999).

3:
Id.

4:
Id.

5:
Brown v. Ohio
,
 
432 U.S. 161, 169, 97 S. Ct. 2221, 2227 (1977).

6:
Hawkins
,
 
6 S.W.3d at 566 n.6.

7:
See
 
Tex. Penal Code Ann.
 §§ 29.02-.03 (Vernon 2003).

8:
Id.
 § 29.01(1).

9:
Lopez v. State
, 108 S.W.3d 293, 300-01 (Tex. Crim. App. 2003) (emphasis added) (footnote omitted).

10:
See id.
 at 303 n.28.

11:
See 
Tex. Penal Code Ann.
 § 29.03.

12:
See Jefferson v. State
, 144 S.W.3d 612, 613-14 (Tex. App—Amarillo 2004, no pet.); 
Garcia v. State
, No. 04-97-00905-CR, 1998 WL 796169, at *2 (Tex. App.—San Antonio Nov. 18, 1998, pet. ref’d) (not designated for publication).

13:
Ex parte Cavazos
, 203 S.W.3d 333, 337 (Tex. Crim. App. 2006).

14:
Id.

15:
See id.
 at 338 & n.8; 
see also Ex parte Cravens
, 805 S.W.2d 790, 791 (Tex. Crim. App. 1991).

16:
See Cravens
, 805 S.W.2d at 791.

17:
Johnson v. State
, 23 S.W.3d 1, 8-9 (Tex. Crim. App. 2000).

18:
See Watson v. State
, 204 S.W.3d 404, 414-15, 417 (Tex. Crim. App. 2006); 
Drichas v. State
, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005); 
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003); 
Johnson
, 23 S.W.3d at 8-9, 11-12; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997) (all providing factual sufficiency standard of review).