In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00091-CV


______________________________




DARIN ROSS AND WIFE, KIMBERLY ROSS, Appellants



V.



BENJAMIN GUERRA, M.D., Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 2001-1348-B




 




Before Morriss, C.J., Grant and Ross, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 Darin Ross and his wife, Kimberly Ross, appeal the summary judgment granted in favor of 
Dr. Benjamin Guerra. The record shows the trial court granted summary judgment on
March 11, 2002. The Rosses' deadline to file a notice of appeal was April 10, 2002. That deadline
would have been June 10, 2002, if they had filed a timely (1) motion for new trial, (2) motion to
modify the judgment, (3) motion to reinstate, or (4) request for findings of fact and conclusions of
law in an appropriate case. See Tex. R. App. P. 26.1(a); see also Tex. R. App. P. 4.1(a) (if the last
day of a period is on a Saturday, Sunday, or legal holiday, the period is extended to the end of the
next day that is not a Saturday, Sunday, or legal holiday).

 The notice of appeal was filed on June 24, 2002. No motion for new trial, motion to modify,
or motion to reinstate was filed. The record shows the Rosses requested findings of fact and
conclusions of law. However, an appellate court cannot consider findings of fact and conclusions
of law in connection with a summary judgment. Simmons v. Healthcare Ctrs. of Tex., Inc., 55
S.W.3d 674, 680 (Tex. App.-Texarkana 2001, no pet.). Therefore, a request for findings of fact and
conclusions of law will not extend the period for filing a notice of appeal from a summary judgment. 
Tex. R. App. P. 26.1(a)(4); Linwood v. NCNB Tex., 885 S.W.2d 102, 103 (Tex. 1994).

 We notified the Rosses of this defect and gave them ten days in which to show cause why
the appeal should not be dismissed for want of jurisdiction. See Tex. R. App. P. 42.3(a). The Rosses
have filed a motion to extend time in which to file the notice of appeal. In that motion, they aver that
the attorney who was responsible for the case passed away on March 25, 2002. Before he died, the
attorney left instructions with his staff to "file a Request for Findings of Fact and Conclusions of
Law by March 29, 2002, . . . Notice of Past Due Findings of Fact and Conclusions of Law . . . [and
the] Notice of Appeal ninety (90) days from the date . . . [of] Request for Findings of Fact and
Conclusions of Law." However, the Rosses admit that findings of fact and conclusions of law
should not have been requested and that the notice of appeal was due on April 10, 2002.

 In Verburgt v. Dorner, 959 S.W.2d 615, 617 (Tex. 1997), the Texas Supreme Court held,
under the old Rules of Appellate Procedure, a motion for extension is implied when an appellant,
acting in good faith, files an appeal bond after the time allowed by the rules, but still within the time
for filing a request for an extension. Courts since Verburgt have applied its reasoning under the
revised Rules of Appellate Procedure, which eliminated appeal bonds. Chilkewitz v. Winter, 25
S.W.3d 382, 383 (Tex. App.-Fort Worth 2000, no pet.) (per curiam); Indus. Servs. U.S.A., Inc. v.
Am. Bank, N.A., 17 S.W.3d 358, 359 (Tex. App.-Corpus Christi 2000, no pet.) (per curiam); Smith
v. Houston Lighting & Power Co., 7 S.W.3d 287, 288 (Tex. App.-Houston [1st Dist.] 1999, no pet.);
Kidd v. Paxton, 1 S.W.3d 309, 310 (Tex. App.-Amarillo 1999, pet. denied) (op. on reh'g).

 This case does not present a situation in which we can imply a request for an extension,
because the notice of appeal was filed over two months after it was due, well beyond the deadline
under the rule for filing a request for an extension. See Tex. R. App. P. 26.3. This Court is without
jurisdiction over the appeal. The Rosses' motion to extend is overruled.

 The appeal is dismissed for want of jurisdiction.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: July 31, 2002

Date Decided: August 1, 2002


Publish



794 (1969). 
The Double Jeopardy Clause of the Fifth Amendment embodies several concepts: it protects a
person from being twice prosecuted for the same offense; it precludes the State from prosecuting
someone for the same offense or a lesser-included offense after a jury has acquitted the accused; and
it bars punishing a person more than once for the same offense. Nickerson v. State, 69 S.W.3d 661,
670 (Tex. App.--Waco 2002, pet. ref'd); see also U.S. Const. amend. V; Hutchins v. State, 992
S.W.2d 629, 631 (Tex. App.--Austin 1999, pet. ref'd, untimely filed). The Double Jeopardy Clause
is violated if a defendant is prosecuted twice for the same offense. Ex parte Hawkins, 6 S.W.3d 554,
556 (Tex. Crim. App. 1999); see Sanabria v. United States, 437 U.S. 54, 69-70 (1978). 

 Miles must show, to prevail on his double jeopardy claim, that the two offenses constitute
"the same offense" under the Double Jeopardy Clause. See Ortega v. State, 171 S.W.3d 895, 896
(Tex. Crim. App. 2005) (en banc). In determining whether conviction for two offenses constitutes
double jeopardy, we will apply the test commonly called the "same elements" or Blockburger test
announced by the United States Supreme Court some seventy-five years ago. See Blockburger v.
United States, 284 U.S. 299, 304 (1932); Ephraim v. State, 237 S.W.3d 438, 440 (Tex.
App.--Texarkana 2007, pet. ref'd); see United States v. Dixon, 509 U.S. 688, 704 (1993) (reinstating
the Blockburger test). Blockburger ruled that, where one act or transaction violates two different
criminal statutes, courts determine whether there are two offenses or only one by determining
"whether each provision requires proof of a fact which the other does not." Blockburger, 284 U.S.
at 304. 

 (a) Deadly Conduct Could Be a Lesser-Included Offense of Felony Murder

 Both the United States Supreme Court and the Texas Court of Criminal Appeals have held
that associated greater-inclusive and lesser-included offenses constitute the same offense for double
jeopardy purposes. See Brown v. Ohio, 432 U.S. 161, 169 (1977); Hall v. State, 225 S.W.3d 524,
533 (Tex. Crim. App. 2007). Miles cites Honeycutt v. State, 82 S.W.3d 545, 549 (Tex. App.--San
Antonio 2003, pet. ref'd), for the proposition that deadly conduct is a lesser-included offense of
aggravated assault. Miles argues "[t]he instant case presents the exact same fact scenario, with the
exception that the victim died in the instant case." Applying the reasoning of Honeycutt and the
Texas Court of Criminal Appeals opinion in Jacob v. State, 892 S.W.2d 905, 908 (Tex. Crim. App.
1995), Miles argues the deadly conduct conviction is for the same offense as the felony murder
conviction. 

 The Texas Court of Criminal Appeals has recently adopted the "cognate-pleadings" test to
evaluate whether an offense is a lesser-included offense of another. (5)
 See Hall, 225 S.W.3d at 535;
Jones, 241 S.W.3d at 670. The court rejected the "cognate-evidence" approach in which the court
"includes the facts adduced at trial in its lesser-included offense analysis." See Hall, 225 S.W.3d at
535. "Facts required" under Article 37.09 means the evidence legally required to prove the elements
of the offense. Id.; see Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 2006). Under the "cognate-pleadings" test, a court compares the statutory elements of the greater offense, as modified by the
particular allegations in the indictment, with the statutory elements of the lesser offense. Hall, 225
S.W.3d at 536; see also Ortega, 171 S.W.3d at 899 ("The courts of Texas are bound to follow the
Supreme Court's rule that Fifth Amendment jeopardy questions must be resolved by application of
the Blockburger test, which compares elements of offenses--not conduct."). Applying the "cognate-pleadings" test, the Texas Court of Criminal Appeals has determined deadly conduct is a lesser-included offense of capital murder. See Flores v. State, 245 S.W.3d 432 (Tex. Crim. App. 2008).

 Miles was indicted for felony murder in addition to a separate count of deadly conduct. The
indictment provides in pertinent part that Miles did:

COUNT I: 

PARAGRAPH A


 intentionally or knowingly commit or attempt to commit an act clearly dangerous to
human life, to-wit: shooting a firearm at an individual, that caused the death of Lee
McCowan


PARAGRAPH B:


 . . . intentionally or knowingly commit or attempt to commit an act clearly dangerous
to human life, to-wit: shooting a firearm at an individual, that caused the death of
Lee McCowan, and the defendant was then and there in the course of intentionally
or knowingly committing a felony, to-wit: deadly conduct, and said death of Lee
McCowan was caused while the defendant was in the course of and in the furtherance
of the commission or attempt of said felony


COUNT II:


 . . . knowingly discharge a firearm at or in the direction of individuals, namely,
Samuel Spratling, Broderick Sanders, Kendrick Dunn and Chris Dunn


Under the above indictment, Count I, Paragraph B, charges Miles with felony murder under Section
19.02(b)(3) of the Texas Penal Code, and Count II charges Miles with deadly conduct under Section
22.05(b)(1). See Tex. Penal Code Ann. §§ 19.02(b)(3), 22.05(b)(1) (Vernon 2003). 

 A person commits felony murder when he or she commits or attempts to commit an act,
clearly dangerous to human life, which causes the death of an individual, while in the course of
committing, in furtherance of, or in immediate flight from the commission or attempt to commit a
felony, other than manslaughter. See Tex. Penal Code Ann. § 19.02(b)(3). The State alleged that
the felony underlying the felony murder was deadly conduct. It is well established under Texas law
that deadly conduct can be the underlying felony for felony murder. See Barfield v. State, 202
S.W.3d 912, 914 n.1 (Tex. App.--Texarkana 2006, pet. ref'd); Yandell v. State, 46 S.W.3d 357, 361
(Tex. App.--Austin 2001, pet. ref'd); Rodriguez v. State, 953 S.W.2d 342 (Tex. App.--Austin 1997,
pet. ref'd); see also Johnson v. State, 4 S.W.3d 254, 255-58 (Tex. Crim. App. 1999) (felony murder
does not require proof of any additional dangerous act beyond that covered by underlying felony). 
A person commits deadly conduct under Section 22.05 by knowingly discharging a firearm at or in
the direction of one or more individuals. See Tex. Penal Code Ann. § 22.05(b)(1). 

 Examining the statutory elements (6) of felony murder as modified by the indictment, the State
must prove the following: (1) Miles, or a co-actor, committed or attempted to commit an act clearly
dangerous to human life which caused the death of an individual, (2) while in the course of, in
furtherance of, or in immediate flight from, firing a firearm at or in the direction of one or more
individuals. 

 Next, we compare the above elements to the statutory elements of the alleged lesser-included
offense, as modified by the indictment. See Hall, 225 S.W.3d at 536. To prove deadly conduct, the
State must prove that Miles, or a co-actor, fired a firearm at or in the direction of one or more
individuals. 

 "We then ask the question that Article 37.09(a) poses: are the elements of the lesser offense
'established by proof of the same or less than all the facts required to [establish] the commission of
the offense charged?'" Id. Because all of the elements of deadly conduct are required to prove felony
murder committed in the course of committing deadly conduct, deadly conduct could be a lesser-
included offense of felony murder. 

 Our inquiry is not over, however. Felony murder in this case is a lesser-included offense only
if the same violation of deadly conduct statute was alleged both to prove felony murder and to prove
Count II. An examination of the indictment reveals that the facts necessary to prove the manner and
means of each count differ. The manner and means can affect the availability of lesser-included
offenses. See id. at 531 (noting "[a]ssault by committing bodily injury is a lesser-included offense
of aggravated assault by inflicting serious bodily injury, but not of aggravated assault by threat with
a deadly weapon"). We must determine whether the difference in the manner and means of the two
deadly conduct allegations results in multiple violations of the same statute.

 (b) The Deadly Conduct Offense Alleged in Count II Is Not the Same Deadly Conduct
Offense Underlying the Felony Murder Allegation in Count I

 Although deadly conduct may be a lesser-included offense of felony murder, it does not
automatically follow that the deadly conduct alleged in Count II of the indictment in this case is a
lesser-included offense of the felony murder alleged in Count I of the indictment. A person can
commit multiple violations of a single statute. When a case involves multiple violations of the same
statute, the Blockburger "same elements" test does not apply. (7) Saenz v. State, 131 S.W.3d 43, 51
(Tex. App.--San Antonio 2003), aff'd, 166 S.W.3d 270 (Tex. Crim. App. 2005); see Hawkins,
6 S.W.3d at 556. In order to determine whether the deadly conduct alleged as a separate count is the
same offense as the deadly conduct alleged as the underlying felony for felony murder, we must
determine what is the "allowable unit of prosecution" for deadly conduct. See Saenz, 166 S.W.3d
at 274 ("Double Jeopardy Clause of the Fifth Amendment was violated when the State charged
appellant with three separate counts of capital murder under Section 19.03(a)(7)(A) because the
charges rely on the same three murders for each charge.")

 The Texas Legislature defines whether offenses are the same by prescribing an "allowable
unit of prosecution." Hawkins, 6 S.W.3d at 556; see Sanabria, 437 U.S. at 69-70. The "allowable
unit of prosecution" is "a distinguishable discrete act that is a separate violation of the statute." 
Hawkins, 6 S.W.3d at 556; Ex parte Gonzalez, 147 S.W.3d 474, 476 (Tex. App.--San Antonio
2004, pet. dism'd, untimely filed; pet. dism'd; pet. ref'd [3 pets.]); Nickerson v. State, 69 S.W.3d 661,
671 (Tex. App.--Waco 2002, pet. ref'd). The parties have not cited and our own research has not
discovered any Texas cases which define the "allowable unit of prosecution" for deadly conduct. (8) 
The State argues the "allowable unit of prosecution" should be each victim. In support of this
argument, the State directs our attention to a line of cases which hold the "allowable unit of
prosecution" for an assaultive offense is each complainant. See, e.g., Ex parte Cavazos, 203 S.W.3d
333, 337 (Tex. Crim. App. 2006); Haight v. State, 103 S.W.3d 498, 503 (Tex. App.--San Antonio
2003), rev'd, 137 S.W.3d 48, 49 (Tex. Crim. App. 2004); Hawkins, 6 S.W.3d at 560. None of these
cases, though, define the "allowable unit of prosecution" for deadly conduct. While the above
statement is undoubtedly the general rule for assaultive offenses, there are clearly established
exceptions to the general rule. See Haight, 137 S.W.3d at 49 (official oppression); Mathonican v.
State, 194 S.W.3d 59, 66 (Tex. App.--Texarkana 2006, no pet.) (sexual assault); see also Saenz, 166
S.W.3d at 272-73 (capital murder based on proof of killing more than one victim in same transaction
may result in only one capital murder conviction).

 Deadly conduct is contained in Chapter 22 of the Texas Penal Code, which deals with
assaultive offenses. See Tex. Penal Code Ann. §§ 22.01-.12 (Vernon 2003 & Supp. 2007). 
Deadly conduct, however, differs from most assaultive offenses. Many assaultive offenses are result-oriented offenses. See, e.g., Ex parte Smith, 185 S.W.3d 887, 889 n.5 (Tex. Crim. App. 2006)
(aggravated assault is a result-oriented offense); cf. Villanueva v. State, 227 S.W.3d 744, 751 (Tex.
Crim. App. 2007) (murder is a result-oriented offense). Deadly conduct, though, is not a
result-oriented offense; deadly conduct, rather, is a conduct-oriented offense. Ford v. State, 38
S.W.3d 836, 845 (Tex. App.--Houston [14th Dist.] 2001, pet. ref'd); see Guzman v. State, 188
S.W.3d 185, 190 n.11 (Tex. Crim. App. 2006). Unlike murder or assault, deadly conduct does not
prescribe a specific result. See Ford, 38 S.W.3d at 845. Deadly conduct does not require a victim
to be injured. 

 "A person commits [deadly conduct] if he knowingly discharges a firearm at or in the
direction of: (1) one or more individuals . . . ." Tex. Penal Code Ann. § 22.05(b)(1). The statute
focuses on the act of discharging a firearm, not the victim. Further, the phrase "one or more
individuals" is some indication that the Legislature intended the "allowable unit of prosecution" to
be each discharge of the firearm. If the "allowable unit of prosecution" was each victim, the words
"or more" would be meaningless. The Legislature could have criminalized discharging a firearm at
or in the direction of "an individual" if it intended to define each independent unit of prosecution
based on each victim. Instead, the Legislature chose to criminalize discharging a firearm at or in the
direction of "one or more individuals." This difference is significant. If the "allowable unit of
prosecution" was each victim, a defendant who fires a single shot at a crowd of a hundred persons
could theoretically be charged with a hundred counts of deadly conduct. On the other hand, if the
"allowable unit of prosecution" was each discharge of the firearm, the same defendant could be
prosecuted for only one count of deadly conduct. We believe the legislative intent is clear from the
plain language of the statute. For a defendant charged with deadly conduct under subsection (b)(1)
of Section 22.05, the "allowable unit of prosecution" is each discharge of the firearm.

 This conclusion is supported by the discussion in footnote three of Honeycutt. See
Honeycutt, 82 S.W.3d at 549 n.3. In Honeycutt, the San Antonio Court of Appeals rejected the
State's argument that deadly conduct was not a lesser-included offense because the evidence showed
"the defendant knowingly fired at more than just the victim of the aggravated assault." Id. The court
concluded the presence of additional individuals was not a separate and unique element. Id. As
noted above, the court did not define the "allowable unit of prosecution" for deadly conduct. The
discussion in the footnote, however, implies that the "allowable unit of prosecution" is not each
victim. See id. Honeycutt is not clear concerning how many shots were fired. (9) We disagree with
Honeycutt to the extent it could be interpreted as holding "the allowable unit of prosecution" is not
each discharge of the weapon. (10) 

 Because the State appears to have operated under the assumption that the "allowable unit of
prosecution" was each victim, it is impossible to determine from the indictment in this case whether
deadly conduct underlying the felony murder conviction is the same discrete act as the deadly
conduct alleged separately. Although the indictment alleges different victims, (11) the indictment fails
to specify whether the counts are based on the same or different discharges of a firearm. The
evidence at trial, however, clearly establishes the counts are based on distinct acts of discharging a
firearm. 

 The "cognate-pleadings" test prohibits inquiry into the evidence presented. (12) As mentioned
above, the "allowable unit of prosecution" doctrine is distinct from the "same elements" test of
Blockburger. The Texas Court of Criminal Appeals has not applied the "cognate-pleadings"
approach to cases involving the "allowable unit of prosecution." When deciding whether the two
narcotics sales constituted two separate offenses in Blockburger, the United States Supreme Court
explicitly examined the evidence. Blockburger, 284 U.S. at 301-02. A number of Texas cases have
inquired into the facts when deciding whether two convictions constituted the same "allowable unit
of prosecution." See, e.g., Cavazos, 203 S.W.3d at 337 (concluding defendant was punished multiple
times for single unlawful entry); Williams v. State, 240 S.W.3d 293, 300 (Tex. App.--Austin 2007,
no pet.) (double jeopardy violated when defendant convicted of both robbery and aggravated robbery
of single victim not named in indictment); Honeycutt, 82 S.W.3d at 548-49. This inquiry is, by its
very nature, a fact-intensive inquiry. Once we have determined the "allowable unit of prosecution"
as a matter of law, we believe it is appropriate to examine the evidence in determining whether two
convictions are based on the same "allowable unit of prosecution." (13)

 In this case, the deadly conduct in Count II constituted an independent unit of prosecution. 
The evidence is clear in the current case that multiple shots were fired by Miles or by a party for
whom Miles was criminally responsible. The police estimated that six to eight persons fired
weapons identified as .45 caliber, .380 caliber, .40 caliber, 7.62x39 mm, and 9mm firearms. Over
fifty shells were recovered at the scene. The evidence established several of the victims alleged in
Count II were injured by gunfire. Officer Jeanine Nixon testified Christopher Dunn was shot in the
lower right leg. Samuel Spratling testified he had been shot. Kedrick Dunn testified that James Epps
fired a number of shots at him and identified a number of bullet holes in the car door behind which
Kedrick was taking cover. Kinchen testified Miles had a black .45 caliber pistol in his possession
previously that day. Sanders and Kinchen testified they observed Miles firing a gun. Eleven shell
casings from two different .45 caliber weapons were found at the scene. Six shells were fired by one
of the .45 caliber weapons and five shells were fired by the other. The bullet that killed McCowan
was extracted from McCowan's body by Dr. Robert Palmer, a board certified pathologist. As such,
the evidence clearly establishes that multiple shots were fired at or in the direction of Samuel
Spratling, Broderick Sanders, Kedrick Dunn, or Chris Dunn that were different from the shot which
killed McCowan. The act of firing at or in the direction of McCowan was a distinct discrete act from
firing at or in the direction of Samuel Spratling, Broderick Sanders, Kedrick Dunn, or Chris Dunn. 

 The particular course of conduct engaged in by Miles, or by a co-actor for whom Miles was
criminally responsible, involved multiple distinct offenses under the deadly conduct statute. The
deadly conduct offense contained in Count II of the indictment was a distinct offense from the deadly
conduct offense underlying the felony murder offense in Count I of the indictment. Therefore, the
deadly conduct allegation in Count II of the indictment is not the lesser-included offense of the
felony murder allegation. The Double Jeopardy Clause was not violated. We overrule this point of
error.

(3) The Trial Court Did Not Abuse Its Discretion in Admitting the Statement by a Co-Defendant

 Miles also argues that the trial court erred in admitting an inflammatory statement made by
a co-defendant over the objection of defense counsel. (14) During the direct examination of Samuel
Spratling, the State asked Spratling: "[w]as there anything said by Mr. Miles to you or any of the
guys standing with you?" When Spratling responded in the negative, the State presented Spratling
with a written statement he had made to Officer Nixon. After reviewing his statement, Spratling
testified that Miles had asked "what's up" and "somebody replied, one of his home boys." According
to Spratling, the reply was "[j]ust wanted to know who jumped my n____." Later in the
examination, Spratling admitted he told Officer Nixon that Miles stated "I don't know why you
approaching me like that but you approaching the wrong n____ and you are gonna get killed," but
Spratling insisted he was wrong about who said the statement. Spratling testified that James Epps
actually made the statement. Miles objected to the statement as hearsay and a Confrontation Clause
violation, referencing "Crawford v. Washington." On appeal, Miles argues the statement violates
the Confrontation Clause based on Crawford v. Washington, 541 U.S. 36 (2004). 

 In Crawford, the United States Supreme Court set out a new test for challenges to
out-of-court statements based on the Confrontation Clause. See Crawford, 541 U.S. 36. Crawford
held that the Confrontation Clause was a procedural guarantee which commands that "reliability be
assessed in a particular manner: by testing in the crucible of cross-examination." Id. at 61. The
Court held that, "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands what
the common law required: unavailability [of the witness] and a prior opportunity for
cross-examination." Id. at 68. 

 Faced with a Crawford challenge, we must determine whether the statements at issue are
testimonial or nontestimonial in nature. Id.; Zuliani v. State, 97 S.W.3d 589, 595 (Tex. Crim. App.
2003). Testimonial hearsay statements of a person who does not appear at a defendant's trial are
inadmissible unless that person was unavailable to testify and the defendant had a prior opportunity
for cross-examination. Crawford, 541 U.S. at 68. We review Crawford issues de novo. Wall v.
State, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006). In determining whether a statement is
"testimonial," we use the standard of an objectively reasonable declarant standing in the shoes of the
actual declarant. Id. at 742-43. The timing, purpose, and setting of a challenged statement can be
relevant considerations when determining whether the statement's primary purpose is testimonial. 
See Davis v. Washington, 547 U.S. 813 (2006).

 The original out-of-court statement, whether made by James Epps or Miles, was not
testimonial. Co-conspirator statements made in the furtherance of a conspiracy are nontestimonial. 
Crawford, 541 U.S. at 68; Wiggins v. State, 152 S.W.3d 656, 659 (Tex. App.--Texarkana 2004, pet.
ref'd). The statement was not made to a police officer, but to an acquaintance. An objective witness
standing in the declarant's shoes would not reasonably believe that the statement would be used at
a later trial. Due to the timing, purpose, and setting of a challenged statement, the original out-of-court statement, whether made by James Epps or Miles, was nontestimonial.

 Miles also challenges the use of Spratling's statement to the police in which Spratling
attributes the statement to Miles. At trial, Spratling denied that Miles had made the statement and
testified the statement was made by James Epps. The State used Spratling's statement to the police
in order to refresh Spratling's memory and as a prior inconsistent statement. Assuming, without
deciding, that Spratling's statement to the police was testimonial, the use does not violate Crawford
because Spratling testified at trial. There is no violation of the Confrontation Clause under Crawford
when a witness actually testifies at trial. Carter v. State, 150 S.W.3d 230, 241 (Tex.
App.--Texarkana 2004, no pet.). We overrule this point of error.

(4) The Evidence Is Legally and Factually Sufficient

 In six points of error, Miles challenges the legal and factual sufficiency of the evidence. In
his first two points of error, Miles claims the evidence is legally and factually insufficient to support
the criminal conspiracy conviction. In his remaining points of error, Miles argues the evidence is
legally and factually insufficient to support the felony murder conviction.

 In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000).

 In a factual sufficiency review, we review all the evidence, but do so in a neutral light and
determine whether the evidence supporting the verdict is so weak or is so outweighed by the great
weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly
unjust. Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); Watson v. State, 204 S.W.3d
404, 414-15 (Tex. Crim. App. 2006); Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).

 The charges in this case originate from a gunfight between one group of individuals,
including Miles, and another group known as the "Calloway Country Crips," also known as the
"Three Cs," that occurred in the parking lot of Spring Street Park in Marshall, Texas. Several days
before the gunfight, Marsha "Marshay" White and Terrance "Fats" Stephenson had a physical
altercation when Stephenson refused to take their child to the doctor. White testified the fight made
Miles angry. Daniel Johnson and Kinchen testified Miles was involved in a fight at a club known
as "Green Acres" a few days later. Kinchen testified "a couple of 3-C guys" fought with Miles and
Greg Epps. 

 The next day, several individuals met at a house on North Allen Street owned by a relative
of James Epps. (15) Kinchen testified that those present included himself, "James Epps, Kendrick
Miles, Jerry Brightman, Stevens (sic) and Leary." (The State asserts that "Stevens" refers to Terrance
Stephenson.) The individuals decided to go to the Belaire apartment complex and fight those
individuals who had "jumped" Miles the night before. Kinchen testified James Epps had a
"Mac-90"--an assault rifle--and Miles had a black .45 pistol. 

 Cedric also testified there was a meeting at the house on North Allen Street. Miles was
present at the meeting. Cedric testified Miles told him they were going to Belaire and "they wanted
to shoot and he was going with 'em." Although Cedric testified he did not see Miles with a gun,
Cedric admitted he told the police that Miles had a handgun. Cedric testified the meeting lasted
around twenty minutes and concluded around one o'clock in the afternoon. 

 Kinchen testified they encountered Johnson and others at the Belaire apartment complex, but
decided to go someplace else to fight since the police "could get [to Belaire] fast." (16) According to
Kinchen, James Epps suggested they go to Spring Street Park. Johnson testified there was "conflict"
at the Belaire apartment complex, but denied anyone got into a fight. Johnson testified he and his
friends went to Spring Street Park, but denied there was an agreement "to go to the park and fight." 
Johnson testified, "[u]sually on Sunday we go to the park anyway." 

 Around two o'clock in the afternoon of the day after the assault, the two groups confronted
each other in the parking lot of the park. Members of both sides possessed firearms. Words were
exchanged and a fistfight broke out. During the fistfight, Johnson testified that Stephenson exhibited
a firearm, but did not fire it. According to Johnson and Patrice White, Leary exhibited a gun, but
the gun jammed. James Epps, who had a "Mac-90"--an assault rifle resembling an "SKS"--was
the first person to open fire. (17) After James Epps opened fire, a number of other individuals grabbed
weapons and began shooting. When the police arrived, they discovered at least five injured persons. 
McCowan ultimately died from his injuries. The police estimated that six to eight persons fired
weapons identified as .45 caliber, .380 caliber, .40 caliber, 7.62x39 mm, and 9mm firearms. 

 According to Miles, the evidence is legally and factually insufficient to support the criminal
conspiracy conviction. Section 15.02 of the Texas Penal Code provides in pertinent part:

 (a) A person commits criminal conspiracy if, with intent that a felony be
committed:


 (1) he agrees with one or more persons that they or one or more
of them engage in conduct that would constitute the offense; and


 (2) he or one or more of them performs an overt act in pursuance
of the agreement.


 (b) An agreement constituting a conspiracy may be inferred from acts of
the parties.


 (c) It is no defense to prosecution for criminal conspiracy that:


 . . . . 


 (5) the object offense was actually committed.


Tex. Penal Code Ann. § 15.02 (Vernon 2003). In Count III of the indictment, the State alleged
Miles committed criminal conspiracy by:

 with intent that Aggravated Assault, a felony, be committed, agree with Jerry
Brightman, James Epps, Laddarrean Leary, and Terrance Stephenson that one of
them would engage in conduct that would constitute said offense, to-wit: shooting
a firearm at individuals, and James Epps performed an overt act in pursuance of said
agreement, to-wit: shooting a firearm. 


 Since direct evidence of intent is rarely available, the existence of a conspiracy can be proven
through circumstantial evidence. See Underwood v. State, 967 S.W.2d 925, 931 (Tex.
App.--Beaumont 1998, pet. ref'd); see also Farrington v. State, 489 S.W.2d 607 (Tex. Crim. App.
1972). The State introduced sufficient evidence for a rational juror to conclude a criminal conspiracy
had formed. After the fight at the Green Acres Club, several members of Miles' "side" met at a
house on North Allen Street. Kinchen testified that those present included himself, "James Epps,
Kendrick Miles, Jerry Brightman, Stevens (sic) and Leary." Guns were present at the meeting. The
individuals decided to go to the Belaire apartment complex and fight those individuals who had
"jumped" Miles the night before. Cedric testified Miles told him they were going to Belaire and
"they wanted to shoot and he was going with 'em." Multiple witnesses testified that James Epps was
the first person to open fire at the park.

 A rational juror could have concluded beyond a reasonable doubt from the above evidence
that Miles, with the intent that aggravated assault be committed, agreed with one or more persons
that one of them would commit aggravated assault and that James Epps performed an overt act in
furtherance of that agreement.

 In conducting a factual sufficiency review, we must consider the evidence that, according to
the appellant, most undermines confidence in the jury's verdict. Curiel v. State, 243 S.W.3d 10, 16
(Tex. App.--Houston [1st Dist.] 2007, pet. ref'd); see Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim.
App. 2003). Miles directs us to the testimony of a number of individuals who testified they believed
the fight would involve only hand-to-hand combat, not guns. Miles also points to evidence, that the
parties had to retrieve guns from their vehicles after the fighting started, as support for the belief that
the fight would not involve guns. Miles argues, if there was a conspiracy, the conspiracy was not
to commit aggravated assault. Adarius Faggett, Kedrick Dunn, Daniel Johnson, and Miguel Kinchen
testified they understood the altercation would be only a fistfight. However, according to Kinchen's
testimony, none of these witnesses, with the exception of Kinchen, was present at the above meeting. 
Miles also directs this Court's attention to Kinchen's testimony that the State reduced a robbery
charge pending against him to a misdemeanor possession of a firearm charge in exchange for his
testimony. "The jury is the exclusive judge of the credibility of witnesses and of the weight to be
given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the
evidence." Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). In resolving conflicts
in the evidence, a jury "may accept one version of facts and reject another or reject any of a witness'
testimony." Baker v. State, 986 S.W.2d 271, 276 (Tex. App.--Texarkana 1998, pet. ref'd). The
evidence is not so weak or so outweighed by the great weight and preponderance of the evidence that
the jury's verdict is clearly wrong or manifestly unjust. The evidence of criminal conspiracy is
legally and factually sufficient. 

 In addition, Miles argues the evidence is legally and factually insufficient to support his
conviction for felony murder. Miles claims there is no evidence that Miles intentionally solicited,
encouraged, directed, aided, or attempted to aid another person to discharge a firearm at one or more
individuals. Miles also argues no evidence of the requisite intent. In its brief, the State concedes
that there was "no evidence as to which shooter actually killed the victim" and the law of parties "is
the only avenue available for a determination of criminal responsibility." Since the State limits its
theory of responsibility to the law of parties, we will not discuss whether the evidence is sufficient
to convict Miles as a principal. 

 The first step in our analysis is to determine whether there is sufficient evidence that the law
of parties applies. A person is criminally responsible as a party to an offense if the offense is
committed by the conduct of another for which he or she is criminally responsible. Tex. Penal
Code Ann. § 7.01(a) (Vernon 2003). In Rosillo, the appellant was one of several men who entered
a bar while armed. 953 S.W.2d at 812-14. Inside the bar, multiple gunshots were fired in rapid
succession, but no one actually saw who shot the deceased. Id. The Corpus Christi Court of Appeals
held the evidence was sufficient under the law of parties. Id. 

 Like Rosillo, here there is overwhelming evidence that Miles was a party to the murder even
though the police were unable to determine who fired the fatal round. The meeting at North Allen
Street discussed above is evidence that Miles solicited, encouraged, directed, aided, or attempted to
aid another person to discharge a firearm at one or more individuals. During the fight, there is
considerable evidence that Miles was an active participant. Keith Moore testified Miles had a
handgun during the gunfight. Johnson and Patrice White testified that Miles had a handgun which
he pointed at various individuals. Sanders and Kinchen testified they observed Miles firing a gun. 
Eleven shell casings from two different .45 caliber weapons were found at the scene. (18) Six shells
were fired by one of the .45 caliber weapons and five shells were fired by the other. A reasonable
inference from the evidence would be that Miles encouraged or aided in the commission of the
offense by being an active participant in the gunfight. After the fight, Miles admitted to Cedric they
"got into it at the park." The evidence was sufficient for a rational juror to have concluded, beyond
a reasonable doubt, that Miles solicited, encouraged, directed, aided, or attempted to aid another
person to discharge a firearm at one or more individuals. 

 Miles presented several witnesses who testified he did not have a gun. Tameka Howard and
Delvin Wilson testified that they saw Miles running across the parking lot after shots had been fired
and that Miles did not have a gun. Patrice Jackson testified that she observed Miles squatting behind
a car during the gunfight and that he did not have a gun. Gwendolyn Miles, Miles' mother, testified
that she was able to observe Miles during the entire gunfight and that he did not have a gun. If the
jury found the testimony of these witnesses credible, the jury still could have found Miles solicited,
encouraged, or directed others in the meeting prior to the fight at Spring Street Park. The jury was
also entitled to reject the testimony of these witnesses. Viewed in a neutral light, the jury's
conclusion is not so against the great weight and preponderance of the evidence as to be clearly
wrong or unjust.

 In the alternative, Miles claims there is no evidence he possessed the required intent to aid
or encourage the others to shoot. With the exception of James Epps, Miles claims all of the
participants were shooting in self-defense. (19) The Texas Court of Criminal Appeals has held that
"Section 19.02(b)(3) plainly dispenses with a culpable mental state." Lomax v. State, 233 S.W.3d
302, 305 (Tex. Crim. App. 2007) (concluding felony driving while intoxicated could be the
underlying felony for felony murder). According to Miles, there was insufficient time for him to
form the required intent. There is ample evidence that Miles possessed sufficient intent, under the
law of parties, to commit deadly conduct, the felony underlying the felony murder conviction. There
is no requirement that the intent be premeditated or formulated prior to the commission of the
underlying felony. The evidence supporting the jury's conclusion that Miles was guilty of felony
murder is legally and factually sufficient.

 We affirm the judgment of the trial court.




 Josh R. Morriss, III

 Chief Justice


Date Submitted: February 8, 2008

Date Decided: June 3, 2008


Publish


1. Because this opinion refers both to Kendrick Ray Miles and his brother, Cedric Miles, we
will refer to Kendrick Ray Miles as Miles and to Cedric Miles as Cedric, unless otherwise specified.
2. This claim represents Miles' fifth point of error.
3. This is Miles' third point of error.
4. Miles does not allege his conviction for criminal conspiracy violates the Double Jeopardy
Clause. The United States Supreme Court has held that criminal conspiracy is a separate offense
from the underlying predicate offense for double jeopardy purposes. See United States v. Felix, 503
U.S. 378, 383 (1992).
5. In Hall, the court returned to a two-step analysis in determining whether a defendant is
entitled to a lesser-included offense instruction. Jones v. State, 241 S.W.3d 666, 670 (Tex.
App.--Texarkana 2007, no pet.). The first step on appellate review is to ascertain whether there is,
indeed, a lesser-included offense by comparing the elements of the greater offense and the lesser
offense as contained in the charging document without any reference to the facts or evidence of the
particular case. Id. After the first determination is answered positively, the second step is to conduct
an inquiry concerning whether there was sufficient evidence at trial to have required the court to
submit to the jury the issue of the lesser-included offense. Id. at 670-71. The Texas Court of
Criminal Appeals has announced that the "cognate-pleadings" approach should be used to determine
whether an offense is a lesser-included offense for double-jeopardy challenges. Bigon v. State,
No. PD-1769-06, 2008 Tex. Crim. App. LEXIS 1 (Tex. Crim. App. Jan. 16, 2008).

6. "'Element of offense' means: (A) the forbidden conduct; (B) the required culpability; (C) any
required result; and (D) the negation of any exception to the offense." Tex. Penal Code Ann.
§ 1.07(a)(22) (Vernon Supp. 2007). 
7. As noted by the Texas Court of Criminal Appeals in Hawkins, 6 S.W.3d at 557 n.8,
Blockburger also addressed whether two sales of narcotics constituted a single offense. See
Blockburger, 284 U.S. at 302. The United States Supreme Court concluded the sales constituted two
separate offenses. Id. This principal evolved into the "allowable unit of prosecution" doctrine. 
Hawkins, 6 S.W.3d at 557 n.8. 
8. The only case cited by the parties which addresses double jeopardy in the context of deadly
conduct is Honeycutt, 82 S.W.3d 545. Honeycutt, though, did not determine what the "allowable
unit of prosecution" was. Id.
9. The opinion in Honeycutt states "Honeycutt shot his gun toward the individuals." 
Honeycutt, 82 S.W.3d at 546. Ranger Brooks Long testified he saw "a flash." Id. Those facts
suggest that only one shot was fired. However, Honeycutt admitted to the Federal Bureau of
Investigation that he had "fired 'warning shots.'" Id. at 546-47. The use of the plural there implies
that more than one shot was fired.
10. The State argues Honeycutt actually applied the discredited reasoning of Grady v. Corbin,
495 U.S. 508 (1990), overruled by United States v. Dixon, 509 U.S. 688. Honeycutt, though, does
not cite Grady and does not appear to apply the "same conduct" test of Grady. 
11. If the State is correct that the "allowable unit of prosecution" is each victim, the Double
Jeopardy Clause has still not been violated. The deadly conduct contained in Count II alleges
different victims from the victim alleged in Count I. Therefore, Count II would be a distinguishable
discrete act that is a separate violation of the statute. 
12. Hall, 225 S.W.3d 524; Flores, 245 S.W.3d 432. "Hall swept away a considerable body of
caselaw holding that the evidence presented at trial factored into that determination. It is now clear: 
the evidence should not be considered in applying prong one of the test." Horne v. State, 228
S.W.3d 442, 447 n.6 (Tex. App.--Texarkana 2007, no pet.) (citing Hall, 225 S.W.3d 535-36). 
13. Presiding Judge Keller has cautioned that inquiring into the evidence introduced at trial may
resurrect the "same conduct" test of Grady, 495 U.S. 508, overruled by Dixon, 509 U.S. 688. Judge
Keller stated, "[O]nce it is determined that the alleged offenses pertain to the same instance of
conduct, whether they are related to each other in such a way as to be lesser and greater offenses for
double jeopardy purposes is a question that does not depend in any form upon the evidence
introduced at trial. To hold otherwise is to resurrect the defunct and discredited 'same evidence' test
of Grady v. Corbin." Girdy v. State, 213 S.W.3d 315, 319 (Tex. Crim. App. 2006) (Keller, J.,
concurring) (footnotes omitted). Our inquiry into the evidence does not resurrect the "same conduct"
test. We are examining the evidence to determine whether the offenses relate to the same "allowable
unit of prosecution," i.e., whether the "alleged offenses pertain to the same instance of conduct." 
14. This is Miles' fourth point of error.
15. In its brief, the State alleges there were two meetings at the house on North Allen Street. 
The State asserts Kinchen testified as to a meeting "in the wee hours of the morning" and Cedric
testified to a meeting concluding around one o'clock the afternoon of the gunfight at Spring Street
Park. Our review of the record has not discovered where Kinchen testified as to the time of the
meeting. 
16. White testified she observed Miles in a fight at the Belaire apartment complex where Daniel
"Boone" Johnson resided. The record is unclear concerning whether this was the encounter testified
to by Kinchen or another encounter.
17. Tia Smith, James Epps' girlfriend, and Kinchen testified that Tia hit James Epps' arm when
he pointed the gun, causing it to accidentally discharge. However, Marsha White testified that, while
she was sitting in her car, James Epps "pulled a gun and he looked at me and I'm looking at him, and
I'm like, I'm not scared of you. And all of a sudden he just fired a shot toward my car." Adarius
Faggett testified that James Epps raised the gun, looked where he wanted to shoot, and started firing. 
18. Neither .45 caliber firearm was discovered by the authorities. The police recovered a .45
caliber pistol from Stephenson's car during a traffic stop. None of the eleven shells were fired by
this .45 caliber pistol. 
19. Miles did not request an instruction on self-defense or argue at trial that he acted in self-defense.