COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-260-CR

 

 

MIKAL WALI NAJI                                                               APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL
DISTRICT COURT NO. 2 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








A jury convicted Appellant Mikal Wali Naji of
aggravated robbery with a deadly weapon and aggravated assault with a deadly
weapon, charged in a single indictment. 
Upon his plea of true to the repeat offender notice, the jury assessed
punishment of seventy years=
confinement in the Institutional Division of the Texas Department of Criminal
Justice and a $10,000 fine on each count, with the sentences to be served
concurrently.  In two issues, Appellant
contends that the convictions for both aggravated robbery with a deadly weapon
and aggravated assault with a deadly weapon violate the constitutional
protections against double jeopardy and that the evidence is factually
insufficient to show that he was involved in the alleged offenses.  Because we hold that convictions for both
aggravated robbery with a deadly weapon and aggravated assault with a deadly
weapon violate double jeopardy protections and that the evidence is factually
sufficient to confirm Appellant as one of the parties to the crime, we modify
the judgment to delete the conviction for aggravated assault with a deadly
weapon and affirm the judgment as modified.

On June 29, 2003, the complainant Armaster Lusk
was shot in an incident involving Nicholas Fountain and Appellant.  Lusk had known Fountain for about ten years
but had met Appellant only a few times. 
At trial, Lusk=s fiancée Felicia Atkins
testified that on Friday, two days before the shooting, Lusk had come into the
liquor store where she worked.  Atkins
stated that Fountain and Appellant also came into the store while Lusk was
there.  Lusk bought some gin, which he
paid for in cash.  Lusk was carrying
about $5900.  According to Atkins,  Fountain and Appellant were facing Lusk when
he paid for the gin.  Lusk testified that
Fountain and Appellant did not come into the store but remained outside.








On the following Sunday, Fountain and Appellant
showed up at Atkins and Lusk=s
apartment.  Lusk answered the door and
Atkins stayed in the bedroom.  Atkins
could hear Lusk and the other men talking and watching television.  After about thirty minutes, Atkins went into
the kitchen to eat.  She saw Fountain and
Appellant in the living room with Lusk. 
She then began ironing clothes with her back to the men.  While she was ironing, Appellant got up and
went to the bathroom.  Atkins heard the
toilet flush and then heard someone say, AGet
down.@  She turned and saw that Appellant had a towel
wrapped around his right hand.  Lusk
testified that he saw that Appellant had a gun in the towel.  Atkins stated that Appellant pointed his hand
toward Lusk, and she heard a bang.  She
then heard Lusk go out the front door. 
Lusk ran to another apartment for help.








Fountain, who now had the gun, ran toward her and
shoved her down.  She heard Appellant say
that Ahe
[Lusk] got away.@ 
She testified that Appellant came into the kitchen, took the gun from
Fountain, kicked her in the side, and shot at her, although she also testified
that she had previously told the police that Fountain had shot at her.  The bullet did not hit Atkins.  She heard the two men running to the
bedroom.  She also heard noises like
things were being thrown around the apartment and heard Appellant say, AIt=s not
here.  I don=t see
it.  It=s not
here.@  A few minutes later, she heard them run
out.  She got up, locked the door, and
called 911.  Nothing in the apartment was
missing.  The $5,900 was in the pocket of
the pants Lusk was wearing.

Officer Brad Patterson visited Lusk in the
hospital on the day of the shooting.  At
that time, Lusk told Patterson that Fountain had shot him.  On July 8, Lusk identified both Fountain and
Appellant in a photo spread.  Atkins also
looked at photo spreads and identified Fountain but was unable to identify
Appellant and instead identified another man in the spread.  Based on Lusk=s
identification, an arrest warrant was obtained for Appellant.

In September 2003, Fountain committed suicide.

Appellant was charged on three counts; the first
count was waived.  In count two,
Appellant was charged with

INTENTIONALLY OR
KNOWINGLY, WHILE IN THE COURSE OF COMMITTING THEFT OF PROPERTY, AND WITH INTENT
TO OBTAIN OR MAINTAIN CONTROL OF SAID PROPERTY, THREATEN[ING] OR PLAC[ING]
ARMASTER LUSK IN FEAR OF IMMINENT BODILY INJURY OR DEATH, AND THE DEFENDANT
USED OR EXHIBITED A DEADLY WEAPON, TO-WIT: 
A FIREARM.  

In count three, he was
charged with 

 

INTENTIONALLY OR
KNOWINGLY CAUS[ING] BODILY INJURY TO ARMASTER LUSK BY SHOOTING HIM WITH A
DEADLY WEAPON, TO-WIT:  A FIREARM, AND
THE DEFENDANT DID USE OR EXHIBIT A DEADLY WEAPON DURING THE COMMISSION OF THE
ASSAULT, TO-WIT:  A FIREARM.

 








Appellant argues that the double punishment for
the same conduct of using a firearm to place Lusk in fear of bodily injury or
death violates the double jeopardy clause. 
The evidence is undisputed that the firearm was brandished and fired
during the course of committing the robbery. 
The State argues that because of the manner in which it pled aggravated
robbery, it was free to prosecute for the aggravated assault as well.  That is, the State argues that there were
actually two separate offenses, aggravated robbery and aggravated assault,
because the aggravated assault occurred when Appellant first shot Lusk in the
back, when Lusk could not have perceived any threat, and the aggravated robbery
occurred when Lusk turned around.

The Texas Court of Criminal Appeals has held that
A[r]obbery
is a form of assault.@[2]  The gravamen of robbery is the assaultive
conduct and not the theft.[3]  The allowable unit of prosecution is the
complainant.[4]  Because robbery is an assaultive offense,
there is no robbery without an assault. 
Consequently, the aggravated assault in this case was a necessary part
of the aggravated robbery.













We reject the State=s
argument that the aggravated assault and the aggravated robbery occurred
sequentially in time and are thus separate offenses.  In Brown v. Ohio, a case in
which the defendant was convicted of both auto theft and joyriding after a
nine-day spree, in overturning the auto theft conviction, the United States
Supreme Court held that A[t]he Double Jeopardy Clause is
not such a fragile guarantee that prosecutors can avoid its limitations by the
simple expedient of dividing a single crime into a series of temporal or
spatial units.@[5]  In Hawkins, the Texas Court of
Criminal Appeals noted, @Although Brown is best
known for its discussion of greater and lesser offenses, it is also significant
for its continued insistence that when a statute sets no temporal limits on an
offense, a prosecutor may not bring multiple charges by arbitrarily dividing a
range of time into separate fragments.@[6] The aggravated robbery statute provides no
temporal limits other than that the assault must occur Ain the
course of committing theft.@[7]  A>In the
course of committing theft= means
conduct that occurs in an attempt to commit, during the commission, or in
immediate flight after the attempt or commission of theft.@[8]  Evidence was admitted from which the jury
could conclude that taking Lusk=s money
was Appellant=s sole objective and that his
entry into Lusk=s apartment and assault of
Appellant were in furtherance of that single objective.

In Lopez v. State, the Texas Court of
Criminal Appeals explained,

[T]he offer to sell and
the possession of drugs to complete that specific sale is one single
offense.  Although the State may charge
the offense as being committed in either of these modes, it cannot obtain two
convictions for the same sale under Section 481.112(a).  The entry of two convictions in this case
violates double jeopardy under the Blockburger test because the steps in
this single drug transaction were all Athe result of the original impulse,@ and therefore each step
was not a Anew bargain.@[9]

 








In the case now before this court, aggravated
robbery was the goal.  When Appellant
shot Lusk, he did so in furtherance of that goal.  The shooting was just a Astep
along the way.@[10]  The State cannot create two separate offenses
by pleading use and exhibition of a firearm in the robbery and shooting with a
firearm as separate offenses.  Aside from
the fact that Lusk said he saw the gun wrapped in a towel before the shot was
fired, the aggravated robbery was a single assaultive event.  Even if Lusk had not seen the firearm before
he was shot, use or exhibition of the firearm at any time during the robbery
would satisfy the requisites of proof of aggravated robbery.[11]

We hold that Appellant=s
convictions for both aggravated robbery and aggravated assault of the same
person during a single transaction violate double jeopardy prohibitions,
regardless of the fact that the State alleged in the aggravated robbery count
that Appellant Aused or exhibited@ the
firearm but more specifically alleged in the aggravated assault count that
Appellant shot Lusk.[12]  We sustain Appellant=s first
issue.








The law provides that we must retain the
conviction for the most serious offense and set the other aside.[13]  The most serious offense is the conviction
for which the greatest sentence was assessed.[14]  In this case, the sentences are
identical.  Consequently, we retain the
aggravated robbery conviction and sentence and vacate the aggravated assault
conviction and sentence.  We do so not
because aggravated robbery is a first-degree felony and aggravated assault is
only a second-degree felony but because the aggravated robbery charge appears
in the first live count of the indictment.[15]  The judgment as modified shall reflect only a
conviction for the aggravated robbery with a deadly weapon and the related
sentence of seventy years= confinement and a $10,000 fine.[16]








In his second issue, Appellant argues that the
evidence is factually insufficient to support the witnesses=
identification of him as the robber. 
Appellant focuses on the conflicts in the evidence.  Specifically, Appellant points out that
Atkins was unable to pick his photograph out of a photo spread soon after the
offense and that Lusk told the investigating officer, Brad Patterson, that
Fountain, not Appellant, was the assailant. 
Atkins identified Appellant at trial as the assailant.  Lusk also identified Appellant at trial and
stated that he was Aout of it@ when he
had talked to Patterson.  Resolving
conflicts in the evidence is the jury=s job,
not ours.[17]  Applying the appropriate standard of review,[18]
we hold that the evidence is factually sufficient to support Appellant=s
conviction for aggravated robbery with a deadly weapon.  We overrule Appellant=s second
issue.

Having sustained Appellant=s first
issue and overruled his second issue, we modify the trial court=s
judgment to vacate the conviction and sentence for aggravated assault with a
deadly weapon and to reflect only the conviction for aggravated robbery with a
deadly weapon and the related sentence of seventy years=
confinement and a $10,000 fine.  We
affirm the trial court=s judgment as modified.

 

LEE ANN DAUPHINOT

JUSTICE

PANEL B:   DAUPHINOT, WALKER, and MCCOY, JJ.

WALKER, J. concurs without opinion.

MCCOY, J. concurs without opinion.

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

DELIVERED:  April 26, 2007








 











[1]See Tex. R. App. P. 47.4.





[2]Ex parte Hawkins, 6 S.W.3d 554, 560 (Tex. Crim. App. 1999).





[3]Id.





[4]Id.





[5]Brown v. Ohio,
432 U.S. 161, 169, 97 S. Ct. 2221, 2227 (1977).





[6]Hawkins, 6
S.W.3d at 566 n.6.





[7]See Tex. Penal Code Ann. ''
29.02-.03 (Vernon 2003).





[8]Id. '
29.01(1).





[9]Lopez v. State,
108 S.W.3d 293, 300-01 (Tex. Crim. App. 2003) (emphasis added) (footnote
omitted).





[10]See id. at
303 n.28.





[11]See Tex. Penal Code Ann. ' 29.03.





[12]See Jefferson v. State, 144 S.W.3d 612, 613-14 (Tex. AppCAmarillo
2004, no pet.); Garcia v. State, No. 04-97-00905-CR, 1998 WL 796169, at
*2 (Tex. App.CSan Antonio Nov. 18, 1998, pet. ref=d) (not
designated for publication).





[13]Ex parte Cavazos, 203 S.W.3d 333, 337 (Tex. Crim. App. 2006).





[14]Id.





[15]See id. at
338 & n.8; see also Ex parte Cravens, 805 S.W.2d 790, 791 (Tex.
Crim. App. 1991).





[16]See Cravens,
805 S.W.2d at 791.





[17]Johnson v. State, 23 S.W.3d 1, 8-9 (Tex. Crim. App. 2000).





[18]See Watson v. State, 204 S.W.3d 404, 414-15, 417 (Tex. Crim. App. 2006); Drichas v.
State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005); Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003); Johnson, 23 S.W.3d at 8-9,
11-12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997) (all
providing factual sufficiency standard of review).