IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1544-12






CHRISTOPHER GARFIAS, Appellant



v.



THE STATE OF TEXAS





ON THE STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE SECOND COURT OF APPEALS


TARRANT COUNTY





 Keasler, J., delivered the opinion of the Court, in which Keller, P.J.,
Meyers, Price, and Hervey, JJ., joined. Cochran, J., filed a concurring opinion,
in which Womack, Johnson, and Alcala, JJ., joined.


O P I N I O N 


 Christopher Garfias was charged with aggravated robbery by threat and aggravated
assault causing bodily injury and was convicted of both counts by jury. On appeal, Garfias
argued that these multiple convictions violate his constitutional right to be free from double
jeopardy. The Second Court of Appeals agreed, and vacated his sentence for aggravated
robbery. (1) Because we do not agree that the Double Jeopardy Clause was violated in this
case, we will reverse the court of appeals' judgment.

BACKGROUND

 In the early morning of March 1, 2006, Christopher Garfias went to a gas station in
Hurst, Texas. The store attendant that morning was Shahid Shahid, who admitted Garfias
inside. At some point later, Shahid heard a gunshot and the sound of breaking glass. He saw
Garfias outside the store with a gun in his hand. Garfias reentered the store and pointed his
gun at Shahid, who asked him not to shoot. Garfias shot Shahid four times at close range.

 Garfias was indicted for aggravated robbery by threat, a first-degree felony, (2) and for
aggravated assault causing bodily injury, a second-degree felony. (3) The indictment read as
follows:

CHRISTOPHER GARFIAS, . . . on or about the 1st day of March 2006, did


THEN AND THERE INTENTIONALLY OR KNOWINGLY, WHILE IN
THE COURSE OF COMMITTING THEFT OF PROPERTY AND WITH
INTENT TO OBTAIN OR MAINTAIN CONTROL OF SAID PROPERTY, 
THREATEN OR PLACE SHAHID SHAHID IN FEAR OF IMMINENT
BODILY INJURY OR DEATH, AND THE DEFENDANT USED OR
EXHIBITED A DEADLY WEAPON, TO-WIT: A FIREARM,


COUNT TWO: AND IT IS FURTHER PRESENTED IN AND TO SAID
COURT THAT THE DEFENDANT . . . DID INTENTIONALLY OR
KNOWINGLY CAUSE BODILY INJURY TO SHAHID SHAHID BY
SHOOTING HIM WITH A FIREARM AND THE DEFENDANT DID USE
OR EXHIBIT A DEADLY WEAPON DURING THE COMMISSION OF
THE ASSAULT, TO-WIT: A FIREARM[.]

Garfias pleaded not guilty and was convicted on both counts by the jury. After hearing
additional evidence, the jury assessed his punishment at sixty years' confinement for the
aggravated robbery conviction and life imprisonment for the aggravated assault conviction. (4) 
The trial judge ordered that the sentences run concurrently.

 Garfias did not argue either before or during trial that the Double Jeopardy Clause was
implicated by the multiple offenses for which he had been charged. He raised this argument
for the first time on appeal, alleging multiple punishments had been imposed upon him for
the same offense. (5) In addressing this claim, the court of appeals employed the "same
elements test" established in Blockburger v. United States. (6) The court determined that
because aggravated robbery and aggravated assault, as charged in the indictment, each
required proof of at least one element that the other did not, a double-jeopardy violation was
not apparent on the face of the record and thus Garfias had not preserved his complaint on
appeal. (7)

 This Court granted Garfias's petition for discretionary review, vacated the court of
appeals' judgment, and remanded the appeal. (8) We indicated that while the court of appeals
had conducted a proper Blockburger analysis, the question of whether multiple punishments
violated double jeopardy did not end there. (9) An accused may be punished for two offenses
even though they would be regarded as the same under a Blockburger analysis if the
Legislature had otherwise made clear its intention that he should be. (10) We remanded the case
to the court of appeals for that court to examine other indicia of legislative intent. (11)

 On remand, the court of appeals examined the similarity between aggravated assault
and aggravated robbery under the Texas Penal Code. (12) The court stated that because of the
similarity between how these offenses could have been charged under the evidence of this
case, the Legislature could not have intended for the offenses to be punished multiply. (13) 
Despite finding that aggravated robbery by threat and aggravated assault causing bodily
injury are two separate offenses with different underlying gravamina, the court of appeals
ultimately concluded that the Legislature could not have intended to allow multiple
punishments in this case. (14) Based on this holding, the court vacated Garfias's conviction for
aggravated robbery and affirmed his conviction for aggravated assault. (15) This Court granted
review to determine whether the court of appeals erred in considering how the offenses could
have been charged in making a double jeopardy determination, and whether, in the
alternative, the facts of this case present two discrete events that do not implicate the Double
Jeopardy Clause in the first instance.

ANALYSIS

 Garfias failed to raise his double jeopardy claim to the trial court. However, such a
claim may be raised for the first time on appeal when (1) the undisputed facts show the
double-jeopardy violation is clearly apparent from the face of the record, and (2) enforcement
of the usual rules of procedural default serves no legitimate state interest. (16) We must
therefore first determine whether the undisputed facts show that a double jeopardy violation
is clearly apparent in this case.

 There are three types of double jeopardy claims: (1) a second prosecution for the same
offense after acquittal; (2) a second prosecution for the same offense after conviction; and
(3) multiple punishments for the same offense. (17) A multiple-punishments violation can arise
either in the context of lesser-included offenses, where the same conduct is punished under
a greater and a lesser-included offense, and when the same conduct is punished under two
distinct statutes where the Legislature only intended for the conduct to be punished once. (18) 
Garfias asserts that the latter has occurred in this case.

 The Legislature has the power to establish and define crimes and few, if any,
limitations are imposed upon this power by the Double Jeopardy Clause. (19) Thus the true
inquiry in a multiple-punishments case is whether the Legislature intended to authorize the
separate punishments. (20) There are two ways in which legislative intent can be ascertained:
by analyzing the elements of the offenses in question, or by identifying the appropriate "unit
of prosecution" for the offenses. (21) This Court has held that an "elements" analysis is
appropriate when the offenses in question come from different statutory sections, (22) while a
"units" analysis is employed when the offenses are alternative means of committing the same
statutory offense. (23) In this case, Garfias complains of convictions stemming from different
statutory sections, so we must embark on an "elements" analysis to determine whether
multiple-punishments principles have been violated.

 The starting point of an "elements" analysis in the multiple-punishments context is
the Blockburger test, used to determine whether each of the offenses requires proof of an
element that the other does not. (24) In doing so, courts must focus on the elements alleged in
the charging instrument--not on the offense as defined in the Penal Code. (25) Under this so-called cognate-pleadings approach, double-jeopardy challenges can be made even against
offenses that have different statutory elements, if the same facts required to convict are
alleged in the indictment. (26)

 But as we indicated in our prior opinion, the Blockburger test is only a starting
point--it is a rule of statutory construction, not the exclusive indicator of a double-jeopardy
violation. (27) The Blockburger test cannot allow two punishments for a single course of
conduct when the Legislature intended to authorize only one. (28) To facilitate this analysis, in
Ervin v. State, we set forth a list of non-exclusive factors designed to help courts in the
absence of clear guidance from the Legislature:

whether offenses are in the same statutory section; whether the offenses are
phrased in the alternative; whether the offenses are named similarly; whether
the offenses have common punishment ranges; whether the offenses have a
common focus; whether the common focus tends to indicate a single instance
of conduct; whether the elements that differ between the two offenses can be
considered the same under an imputed theory of liability that would result in
the offenses being considered the same under Blockburger; and whether there
is legislative history containing an articulation of an intent to treat the offenses
as the same or different for double-jeopardy purposes. (29)


 We have indicated that the "focus" or "gravamen" of a penal provision should be
regarded as the best indicator of legislative intent when determining whether a multiple-punishments violation has occurred. (30) For example, in Bigon v. State, we analyzed whether
convictions for both felony murder and intoxication manslaughter violated the Double
Jeopardy Clause. (31) The fact that both offenses were result-oriented and shared the same
focus--the death of an individual--was a key factor in our decision that the Legislature did
not intend to permit multiple punishments in that case. (32) 

 One other factor reviewing courts should consider when making an "elements"
analysis is the determination of the allowable unit of prosecution for the offenses in question. 
Although such a determination is a necessary step when a multiple-punishments claim deals
with two offenses from the same statutory section, we have stated that, even in an "elements"
analysis, such a determination can be indicative of legislative intent. (33)

 As we indicated in our prior opinion, the court of appeals correctly held that the
Blockburger test reveals that the offenses of aggravated robbery by threat and aggravated
assault causing bodily injury, as charged in Garfias's indictment, each contain an element that
the other does not. (34) But as this does not end the analysis of whether the Legislature intended
for Garfias's conduct to be punished multiply, we now consider that question through the
lens of the Ervin factors outlined above.

A. ROBBERY AND ASSAULT

 The court of appeals, in deciding that Garfias's convictions violated multiple-punishments principles, held that "[a]ggravated robbery and aggravated assault share a
common focus. . . . [T]he gravamen of robbery offenses, including aggravated robbery, is the
defendant's assaultive conduct." (35) It concluded that because of the "closeness of the
relationship" between the two offenses, "[w]e cannot fathom . . . that under the circumstances
of this case, the legislature would intend to punish one continuous assaultive act under
multiple assault-related offenses." (36)

 The court of appeals' conclusion was in error. It is true that we have previously held
that robbery is an assaultive offense, (37) and that the unit of prosecution for assaultive
offenses--including robbery--is each victim. (38) However, it is overly simplistic to make a
blanket statement that the gravamen of all robbery offenses is the "assaultive conduct." 
Simple assault and simple robbery, the underlying offenses of those that Garfias was charged
with, can be committed in two ways: either by "threat[ening] or plac[ing] another in fear of
imminent bodily injury or death" (39)--assault or robbery by threat--or by "caus[ing] bodily
injury to another" (40)--assault or robbery causing bodily injury. In Garfias's case, the "use[]
or exhibit[ion]" of a deadly weapon during the commission of the offense elevated simple
robbery by threat to aggravated robbery by threat, and simple assault causing bodily injury
to aggravated assault causing bodily injury. (41)

 Thus while the gravamen of robbery or assault can be generally termed "the
defendant's assaultive conduct against each victim," (42) the individual gravamina of assault or
robbery by threat and assault or robbery causing bodily injury differ significantly. As we
have noted in the past, an assaultive offense by threat is a conduct-oriented offense, while
an assaultive offense causing bodily injury is a result-oriented offense. (43) This case is
illustrative of the distinction between the two gravamina--Garfias's aggravated robbery by
threat conviction focused on his threatening conduct, which violated the personal security
of the victim. (44) On the other hand, the conviction of aggravated assault causing bodily injury
focused solely on the actual harm inflicted. Thus the gravamen of the two offenses in
question--deemed the "best indicator" of legislative intent for an "elements"
analysis (45)--indicates that the Legislature intended to allow multiple punishments for
aggravated robbery by threat and aggravated assault causing bodily injury.

 The other Ervin factors also support this conclusion. First, aggravated robbery by
threat and aggravated assault causing bodily injury are not contained in the same statutory
section. Second, the offenses are not named similarly. And third, the offenses do not have
identical punishment ranges--aggravated assault in this case is a second degree felony, while
aggravated robbery is a first degree felony. (46)

 A determination of the allowable unit of prosecution for the two offenses, which as
noted above can be indicative of legislative intent in an "elements" analysis, also indicates
that the Legislature intended to allow multiple punishments in this case. Garfias argues that
because in Ex parte Hawkins, we stated that the appropriate unit of prosecution for robbery
was each victim, double-jeopardy principles bar his conviction for multiple assaultive
offenses in this case. However, Garfias overlooks the fact that in Hawkins, we were
employing a "units" analysis to answer the question of whether a defendant could be
convicted twice for robbery by threat, committed during the same continuing course of
conduct against two different victims. (47) Hawkins did not deal with the issue we are grappling
with today--whether multiple-punishments principles permit convictions for both an
assaultive offense by threat and an assaultive offense causing bodily injury, committed during
the same continuing course of conduct and against the same victim. Because this double-jeopardy challenge involves two different statutes, Hawkins does not force our hand as to a
units-of-prosecution determination in this case.

 In the end, the units-of-prosecution determination indicates that the Legislature
intended to allow Garfias's multiple punishments. When no express statement defining the
allowable unit of prosecution is provided by the Legislature--and none is provided in this
case--the gravamen of an offense best describes the allowable unit of prosecution. (48) As
indicated above, the gravamina of Garfias's two convictions differ, and therefore the
allowable units of prosecution for the two offenses are not the same. (49)

B. THE COURT OF APPEALS' ARGUMENTS

 Despite the fact that the Blockburger test, the Ervin factors, and the applicable units
of prosecution all point towards the Legislature's intent to allow multiple punishments in this
case, the court of appeals reached the opposite conclusion. (50) Its decision was largely based
on two non-textual arguments that, in its view, demonstrated that the Legislature could not
have possibly intended for a robbery by threat and an assault causing bodily injury to be
punished multiply. We find these arguments unpersuasive.

 First, the court of appeals noted that under the facts of the case, the State could have
charged Garfias with aggravated robbery and aggravated assault in such a way that the
assault would have been a lesser-included offense of the robbery. (51) "The fact that double
jeopardy principles would have presumptively precluded multiple punishments under the
facts of this case . . . if those offenses were charged in other ways supported by the evidence
indicates to us that double jeopardy should likewise prevent multiple punishments even
though the offenses were carefully charged through a method that avoided offending
Blockburger." (52) Unfortunately, this type of hypothetical reasoning was in error. As indicated
above, a double-jeopardy determination hinges not on the statutory elements of the offenses,
but on the elements of the offenses as alleged in the charging instrument. (53) What the State
could have charged--in other words, a hypothetical charging instrument--does not factor
into a reviewing court's determination, and cannot serve as the basis of a double-jeopardy
violation.

 The second non-textual argument relied upon by the court of appeals had to do with
"stop-action prosecution." The court was concerned that allowing multiple punishments in
this case would authorize prosecutors to carve a single continuing course of conduct into
multiple offenses to avoid the safeguards of the Double Jeopardy Clause. (54) Because
Garfias's commission of the assault by threat was "necessary to, incident to, and subsumed
by appellant's causing bodily injury to Shahid by shooting him," the court asserted that the
Legislature could not have intended for the two offenses to be punished multiply when one
was merely a "step along the way" towards the other. (55)

 In reaching its conclusion, the court of appeals cited two decisions of this Court:
Lopez v. State (56) and Patterson v. State. (57) We do not agree that these cases support the court
of appeals' argument. In Lopez, this Court addressed whether multiple-punishments
principles were violated by Lopez's conviction of both possession of a controlled substance
with intent to deliver and delivery of a controlled substance by offer of safe, with respect to
the same quantity of cocaine. (58) We held that the two convictions violated the Double
Jeopardy Clause because "the steps in this single drug transaction were all 'the result of the
original impulse,' and therefore each step was not a 'new bargain.'" (59) The rationale
underlying our decision was that the two offenses shared the same gravamen: "the
distribution of dangerous drugs in our society." (60) The identical rationale of the offenses
meant that the underlying unit of prosecution was the same for both offenses, and thus a
conviction of both would violate the Double Jeopardy Clause.

 Thus Lopez does not stand for the proposition that a defendant can never be convicted
of multiple offenses that occur as "points along a continuum" in a course of a criminal
transaction. (61) Instead, Lopez indicates that a defendant can never be convicted of multiple
offenses when those offenses share the same underlying gravamen. (62) In this way, Lopez
supports our jurisprudence, as set forth above, that legislative intent is the guiding principle
behind a multiple-punishments analysis.

 In Patterson, this Court was asked to address whether a conviction for indecency with
a child by exposure was barred by double-jeopardy principles, when the defendant had also
been convicted of aggravated sexual assault by penetration. (63) Patterson is not on point in this
case for two reasons. First, we declined to resolve Patterson on double-jeopardy grounds,
instead deciding it by construing a statute addressing concurrent versus consecutive
sentencing. (64) And second, even if we had decided the constitutional issue, it is clear that the
elements of the offenses as charged against the defendant were the same under the
Blockburger test. Under the cognate-pleadings approach, when the facts necessary to prove
one offense are included within the proof necessary to establish another, the offenses are
considered the "same" for double-jeopardy purposes, and multiple punishments are barred
unless the Legislature has clearly and specifically authorized them. (65) In Patterson, the
defendant's exposure--proof necessary for the indecency conviction--was included within
the proof necessary to establish the aggravated sexual assault by penetration. (66)

 This case, on the other hand, cannot be resolved on that basis. The facts necessary to
prove Garfias's robbery by threat conviction--namely that Shahid was placed in fear of
imminent bodily injury or death, and that Garfias committed the offense while in the course
of committing theft--were not included within the proof necessary to establish the assault
by causing bodily injury, which required only proof that Garfias caused Shahid bodily injury
by shooting him.

 Thus neither Patterson nor Lopez supports the court of appeals' determination that the
antecedent robbery was "subsumed" into the assault and barred by double jeopardy. The
court of appeals freely acknowledged that the Ervin factors weighed against its decision, but
chose to ignore them and reach the opposite result. (67) In doing so, it departed from long-standing double-jeopardy jurisprudence, which requires courts to analyze double-jeopardy
claims by determining legislative intent via established rules of statutory construction.

CONCLUSION

 Because double-jeopardy principles were not violated in this case, no double-jeopardy
violation is clearly apparent from the face of the record. We therefore do not need to reach
the State's claim that the facts of this case involve two discrete events of criminal conduct. 
The judgment of the court of appeals is reversed and Garfias's conviction for aggravated
robbery with a deadly weapon is reinstated.


DELIVERED: February 26, 2014

PUBLISH
1. Garfias v. State, 381 S.W.3d 626, 635 (Tex. App.--Fort Worth 2012)
(hereinafter Garfias II).
2. Tex Penal Code § 29.03(a)(2), (b) (West 2012).
3. Id. § 22.02(a)(2), (b).
4. Garfias's sentences were enhanced by a prior felony conviction. See Tex Penal
Code § 12.42(b), (c) (West 2012).
5. Garfias v. State, No. 2-06-398-CR, 2008 WL 2404268 at *1 (Tex. App.--Fort
Worth June 12, 2008) (not designated for publication) (hereinafter Garfias I).
6. Id. (citing Blockburger v. United States, 284 U.S. 299, 304 (1932)).
7. Id. at *2.
8. Garfias v. State, No. PD-1323-08, 2011 WL 2674848 at *3 (Tex. Crim. App.
June 29, 2011) (not designated for publication).
9. Id. at *1-2.
10. Id. at *2 (citing Gonzales v. State, 304 S.W.3d 838, 845-46 (Tex. Crim. App.
2010)).
11. Id. at *2-3.
12. Garfias II, 381 S.W.3d at 632.
13. Id.
14. Id. at 632-33.
15. Id. at 635.
16. Gonzalez v. State, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000).
17. Langs v. State, 183 S.W.3d 680, 685 (Tex. Crim. App. 2006); Bigon v. State,
252 S.W.3d 360, 369 (Tex. Crim. App. 2008).
18. Langs, 183 S.W.3d at 685.
19. Harris v. State, 359 S.W.3d 625, 629 (Tex. Crim. App. 2011); Ex parte
Hawkins, 6 S.W.3d 554, 555-557 (Tex. Crim. App. 1999).
20. Ervin v. State, 991 S.W.2d 804, 814 (Tex. Crim. App. 1999).
21. See Hawkins, 6 S.W.3d at 557 n. 8 (citing Blockburger, 284 U.S. at 302) (noting
the distinction between the "units" test and the "elements" test).
22. E.g., Ervin, 991 S.W.2d at 814; Bigon v. State, 252 S.W.3d 360, 370 (Tex.
Crim. App. 2008); Ex Parte Denton, 399 S.W.3d 540, 545-46 (Tex. Crim. App. 2013).
23. E.g., Bigon, 252 S.W.3d at 371-72 ("Usually, analysis of an allowable unit of
prosecution involves a situation in which two offenses from the same statutory section are
charged . . . ."); Harris, 359 S.W.3d at 629-30; Loving v. State, 401 S.W.3d 642, 647-48
(Tex. Crim. App. 2013).
24. Bigon, 252 S.W.3d at 370 (citing Blockburger, 284 U.S. at 304).
25. Bigon, 252 S.W.3d at 370; Parrish v. State, 869 S.W.2d 352, 354 (Tex. Crim.
App. 1994).
26. Bigon, 252 S.W.3d at 370.
27. Id. at 370-71.
28. Gonzales, 304 S.W.3d at 845 (citing Ex parte Ervin, 991 S.W.2d 804, 807 (Tex.
Crim. App. 1999)).
29. Bigon, 252 S.W.3d at 370 (citing Ervin, 991 S.W.2d at 814).
30. Gonzales, 304 S.W.3d at 848 (citing Huffman v. State, 267 S.W.3d 902, 907
(Tex. Crim. App. 2008) (the focus of "result-of-conduct" crimes create separate offenses
for different types of results, while the focus of "nature-of-conduct" crimes create
separate offenses for different types of conduct)).
31. Bigon, 252 S.W.3d at 370.
32. Id. at 371.
33. Id. at 371-72 (a units-of-prosecution determination is not necessary to an
"elements" analysis, but "the spirit behind the principle is fitting" in such a case).
34. Garfias I, 2008 WL 2404268 at *2.
35. Garfias II, 381 S.W.3d at 631.
36. Id. at 631, 633.
37. Denton, 339 S.W.3d at 546; Hawkins, 6 S.W.3d at 560.
38. Denton, 399 S.W.3d at 546 (citing Young v. State, 283 S.W.3d 854, 862 (Tex.
Crim. App. 2009)); Hawkins, 6 S.W.3d at 560.
39. Tex. Penal Code §§ 29.02(a)(2) (robbery), 22.01(a)(2) (assault) (West 2012).
40. Id. §§ 29.02(a)(1) (robbery), 22.01(a)(2) (assault).
41. See id. §§ 29.03(a)(2), 22.02(a)(2).
42. Denton, 399 S.W.3d at 546 (citing Jones v. State, 323 S.W.3d 885, 889 (Tex.
Crim. App. 2010)).
43. See Landrian v. State, 268 S.W.3d 532, 540 (Tex. Crim. App. 2008); see also
Denton, 399 S.W.3d at 546 ("the gravamen of the offense of aggravated assault is the
specific type of assault defined in [the Penal Code].").
44. See Hawkins, 6 S.W.3d at 560 (citing Chestnut v. State, 567 S.W.2d 1, 2 (Tex.
Crim. App. 1978) ("The primary interest protected by the robbery offenses is the security
of the person from bodily injury or threat of bodily injury that is committed in the course
of committing theft.")).
45. Gonzales, 304 S.W.3d at 848.
46. See Tex. Penal Code §§ 22.02(b) (aggravated assault is a second degree
felony), 29.03(b) (aggravated robbery is a first degree felony).
47. Hawkins, 6 S.W.3d at 555.
48. Loving, 401 S.W.3d at 647; Harris, 359 S.W.3d at 630; Vick v. State, 991
S.W.2d 830, 832 (Tex. Crim. App. 1999).
49. See Loving, 401 S.W.3d at 649; Vick, 991 S.W.2d at 833.
50. Garfias II, 381 S.W.3d at 635.
51. Id. at 632.
52. Id.
53. Bigon, 252 S.W.3d at 370; Parrish, 869 S.W.2d at 354.
54. Garfias II, 381 S.W.3d at 633.
55. Id. at 633-34 (citing Naji v. State, No. 02-06-00260-CR, 2007 WL 1266872, at
*2 (Tex. App.--Fort Worth April 26, 2007, pet. ref'd) (holding that aggravated assault
causing bodily injury was a necessary part of aggravated robbery by threat, and a "step
along the way" could not constitute a separate offense).
56. Lopez v. State, 108 S.W.3d 293 (Tex. Crim. App. 2003).
57. Patterson v. State, 152 S.W.3d 88 (Tex. Crim. App. 2004).
58. Lopez, 108 S.W.3d at 294; see also Tex. Health & Safety Code § 481.112(a)
(West 2012).
59. Lopez, 108 S.W.3d at 301 (quoting Blockburger, 284 U.S. at 303).
60. Id. at 299-300.
61. See id. at 297.
62. Id. at 299-300.
63. Patterson, 152 S.W.3d at 89.
64. Id. at 91-92.
65. Parrish, 869 S.W.2d at 354; see also Patterson, 152 S.W.3d at 94 (Hervey, J.,
concurring).
66. Patterson, 152 S.W.3d at 92.
67. Garfias II, 381 S.W.3d at 635 ("We recognize that some of the [Ervin factors]
weigh in favor of a conclusion that the legislature intended multiple punishments . . . .").